512 P.2d 604

Rosie HENSHAW, surviving spouse of Sylvester Henshaw, Deceased, for herself and their minor children, Donald Leslie Henshaw, Kay Ann Henshaw and Rosie May Henshaw, Appellants,

v.

James M. MAYS and Doris Mays, his wife; and the Salt River Project Agricultural Improvement and Power District, a municipal corporation, Appellees.

No. 1 CA–CIV 1860.

Court of Appeals of Arizona,
Division 1,
Department B.

July 24, 1973.

Rehearing Denied Sept. 5, 1973.

Reviews Denied Oct. 16, 1973.

Richard Kamps, and Dennis J. Skarecky, Phoenix, for appellants.

Johnson, Shelley, Roberts & Riggs by John Rasmussen, Mesa, for appellees Mays.

Jennings, Strouss & Salmon by Jon L. Kyl and Gary L. Stuart, Phoenix, for appellees Salt River Project and Hallcraft Homes.

JACOBSON, Chief Judge, Division 1.

This appeal raises the question as to whether plaintiffs who are receiving benefits under the workmen's compensation laws of Arizona may maintain an action against allegedly negligent third party tortfeasors more than one year after the cause of action accrued.

The material facts giving rise to this appeal are not in dispute. On January 31, 1970, Sylvester Henshaw was killed in the course of his employment as a citrus fruit picker. Mr. Henshaw's death occurred when he came in contact with an electrical transformer. Rosie Henshaw, widow of Mr. Henshaw, and their minor children (plaintiffs-appellants in this action) have been and are now receiving the benefits to which they are entitled under the workmen's compensation laws from Industrial Indemnity, Mr. Henshaw's employer's industrial insurance carrier.

On February 5, 1971, (one year and five days after the death of Mr. Henshaw)

plaintiffs brought an action sounding in wrongful death against defendants-appellees, James M. Mays and his wife, Doris Mays and the Salt River Project Agriculture Improvement and Power District, alleging that these defendants' negligent acts caused Mr. Henshaw's death. On May 5, 1971, Industrial Indemnity assigned to the plaintiff "all of its rights, title and interest claims and demands in and to that certain cause of action which Industrial Indemnity may have by virtue of A.R.S. § 23–1023, against those named defendants in Cause No. C–244613, now pending in the Superior Court of the State of Arizona, in and for the County of Maricopa." In addition, this assignment also assigned to the plaintiffs "all other rights, title, interest, claims and demands, if any, against the person or persons responsible for Sylvester Henshaw's accidental death."

On this state of the record, both defendants moved for summary judgment on the grounds that the plaintiffs' failure to file their cause of action within one year after the incident resulting in the death of Mr. Henshaw barred their right to maintain the tort action. This contention is grounded upon A.R.S. § 23–1023, Subsec. B, which provides:

"If the employee entitled to compensation under this chapter, or his dependents, does not pursue his or their remedy against such other person [an allegedly negligent third party] by instituting an action within one year after the cause of action accrues, the claim against such other person shall be deemed assigned to the insurance carrier, or to the person liable for the payment thereof. Such a claim so assigned may be prosecuted or compromised by the insurance carrier or the person liable for the payment thereof."

The trial court granted both motions for summary judgment and this appeal followed.

Following the granting of defendants' motions for summary judgment and on the last day within the two year statute of limitations set forth in A.R.S. § 12–542, Industrial Indemnity filed suit against these same defendants.

This case, together with the cases of Clark v. Kennecott Copper Corporation, Ariz.App., 512 P.2d 611 and Sargent v. Hallcraft Homes, Inc., Ariz.App., 512 P.2d 612, all dealing with the same legal issue, were consolidated for oral argument before this court. Opinions in these two companion cases are also being released this date.

■ The sole question presented by these appeals is:

Does A.R.S. § 23–1023(B) bar recipients of workmen's compensation benefits from maintaining an action against third party tortfeasors where the action is brought more than one year after the accident but within two years and with the approval of the compensation carrier?

In order to answer this question, the legislative history of this section must be reviewed. The liability of third persons to an injured or deceased employee first appeared as § 1435 in the Revised Code of 1928 as follows:

"If an employee entitled to compensation hereunder is injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in case of death, his dependents, *shall elect* whether to take compensation under this title or to pursue his remedy against such other. If he elect to take compensation, the cause of action against such other *shall be assigned* to the state for the benefit of the compensation fund, or to the person liable for the payment thereof . . . .." (Emphasis added.)

This statute was first interpreted in the case of Moseley v. Lilly Ice Cream Co., 38 Ariz. 417, 300 P. 958 (1931). The *Moseley* court analyzed the three types of statutes prevalent in the United States dealing with the right of the injured workman to pursue his common law remedies against a third party tortfeasor as being: (1) where the statute expressly gives the right to the employee to recover compensation and also to sue a third party for negligence; (2)

where the statute does not expressly give the right to both compensation and common law remedies, but provides that the employer is subrogated to the rights of the employee so far as to the amount which the employer has paid is concerned, and that any surplus the employer may recover goes to the injured employee; and (3) where the statute "provides that if the employee elects to bring suit against a third person and his recovery is less than that granted by the Compensation Act, the insurance funds will make up the difference, but that if the employee elects to take compensation, the awarding of compensation shall act as an assignment of the cause of action to the state for the benefit of the insurance fund, or other insurer." Moseley v. Lilly Ice Cream Co., 38 Ariz. at 422, 300 P. at 960.

*Moseley* pointed out that under the first two types of statutes, the employee may both obtain compensation benefits and pursue his tort remedy against the third party tortfeasor. The court held, however:

"On comparison of the different statutes in the three classes we have described above, it is apparent that the Arizona law falls clearly within the third class. We are of the opinion both on authority and on a logical interpretation of the language of our statute that, under its provisions, when payment under the Compensation Act is chosen by the injured employee, his rights of every nature against the third person passed as a matter of law to the state or other insurer, and no right of action, either direct or indirect, remains in him as against such third person." 38 Ariz. at 423, 300 P. at 960.

*Moseley* upheld the constitutionality of this statute on the basis that the injured employee had an election either to receive full compensation benefits or sue the third party in tort.

*Moseley* has been followed in State v. Pressley, 74 Ariz. 412, 250 P.2d 992 (1952); Pressley v. Industrial Commission, 73 Ariz. 22, 236 P.2d 1011 (1951).; and

Ledbetter v. Savittieri, 10 Ariz.App. 65, 455 P.2d 1015 (1969).

One additional case, decided prior to the 1965 amendments, bears on the the problem before the court. In Industrial Commission v. Nevelle, 58 Ariz. 325, 119 P.2d 934 (1941), the court was faced with the issue of the amount that the insurance carrier may collect from the negligent tortfeasor where an injured employee elects to take compensation. The court, likening the status of an insurance carrier who pays compensation to that of an "indemnitor who was subrogated to the right of the injured workman in the same manner as any other surety, and can recover, therefore, only the amount which he had paid or was forced to pay by reason of his character . . . .," (id. at 332, 119 P.2d 937) held:

"that in an action by the commission based on an election made by the injured employee, under section 56–949 [A.C.A., 1939, predecessor to A.R.S. § 23–1023] . . . it may recover only the amount which it has paid, or is bound to pay in the future, as the result of an award made to the employee . . . ." id.

Thus it was clear that prior to 1965, in the case of the injured workman versus the third party tortfeasor, the following prevailed:

1. The injured workman had to make the mutually exclusive election of either accepting workmen's compensation benefits or suing the third party tortfeasor.

2. If he elected to accept benefits, the entire cause of action of the employee, including all his claims for pain and suffering passed to the compensation carrier.

3. When the compensation carrier sued the third party tortfeasor, it was limited in its recovery to the amount it paid the employee (excluding, of course, pain and suffering.)

It was obvious that under this state of affairs the only party who was benefiting by this round robin was the third party tortfeasor, who allegedly caused all the problems in the first place. The law was

in this posture until the legislature, in 1965, amended A.R.S. § 23–1023, still retaining the old "election of remedies" language, but adding that:

"If the election is to proceed against such other person, *compensation and accident benefits shall be paid* as provided in this chapter and the commission or other person liable to pay the claim shall have a lien on the amount actually collectible from such other person to the extent of such compensation and accident benefits paid."

This particular amendment was not the subject of judicial interpretation. However, it clearly allows an injured workman the simultaneous rights to (1) receive compensation benefits and, (2) seek recovery from the negligent third party. *See,* Ledbetter v. Savittieri, *supra.* The amendment was silent, however, as to what occurred if the injured workman did not sue the third party tortfeasor. Thus, in 1969, A.R.S. § 23–1023 was again amended to provide:

"A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in event of death his dependents, may pursue his remedy against such other person.

"B. If the employee entitled to compensation under this chapter, or his dependents, does not pursue his or their remedy against such other person by instituting an action within one year after the cause of action accrues, the claim against such other person shall be deemed assigned to the insurance carrier, or to the person liable for the payment thereof. Such a claim so assigned may be prosecuted or compromised by the insurance carrier or the person liable for the payment thereof.

"C. If he proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectible from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. This lien shall not be subject to a collection fee. The amount actually collectible shall be the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery. The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of this chapter for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of the compensation fund, or of the person liable to pay the claim."

It is to be noted that the 1969 amendment, while deleting the election of remedy language of the prior enactments, still contains the "assignment" language which was present in the original 1925 enactment. Compare: "If he elects to take compensation, the cause of action against such others *shall be assigned* to the state . . . ." (1925 Code provision) with "If the employee . . . does not pursue his . . . remedy against such other person . . . the claim against such other person . . . *shall be deemed assigned* to the insurance carrier . . . ." It is on this basis that the defendants argue that the doctrine of Moseley v. Lilly Ice Cream Co., *supra*, is still the law in this state and the failure of the employee or his dependents to file suit within one year from the date the cause of action accrues results in the claim passing absolutely to the insurance carrier with nothing left in the employee upon which to file an action. The defendants further argue that the purported assignment from the insurance carrier back to the plaintiff is void as against public policy and if not void, the carrier could assign only its claim for the amount of

compensation it has paid or is likely to pay in the future, which does not include any allowance for pain or suffering damages.

In determining whether the legislature, by its 1969 amendment, intended, as the defendants contend, to place a one-year statute of limitations on the right of the compensated employee to seek redress against an allegedly negligent third party, it is helpful to bear in mind the basic purpose of the Arizona Workmen's Compensation Act. As was stated in State v. Pressley, *supra,* 74 Ariz. at 418, 250 P.2d at 996:

"The Act was enacted primarily for the benefit of the injured employee and his dependents [citation omitted], and secondarily for the benefit of the employer. *The Act deals solely with the employer-employee relationship.* No mention is made of third party tort-feasors, except in sections 56–949 [A.R.S. § 23–1023] . . . and 56–950 [A.R.S. § 23–1024] . . . which provide the employee's right to sue a third party *but confers no rights on such third parties.* The public policy has been, first, to protect the employee whose injury arose in and out of the course of his employment; and second, to protect the compensation fund administered by the Commission, which indirectly benefits the employer [citation omitted]." (Emphasis added.)

With this purpose in mind, it is necessary to examine the legislative changes which took place in the 1969 legislation. First, the legislature deleted entirely the exclusive election of remedy language found in the prior legislation. It is, in our opinion, this language upon which Moseley v. Lilly Ice Cream Co., *supra,* and its progeny relied. By this deletion, these cases are no longer authority as to the rights which an injured workman retains against a third party tortfeasor. If there was any question that the legislature wished to divorce the benefits *Moseley* conferred upon

a third party tortfeasor from the Workmen's Compensation Act, reference need be made only to the revisions made in A.R.S. § 23–1024 dealing with the choice of remedies. The pre-amendment statute provided:

"An employee, or his legal representative in event death results, who makes application for an award, or with the consent of the commission accepts compensation from an employer, *waives the right to exercise any option to institute proceedings in court.*" (Emphasis added.)

The post-amendment statute now contains exactly the same language with one addition, so the statute now reads: "waives the right to exercise any option to institute proceedings in court *against his employer.*" (Emphasis added.) With the addition of the modifying phrase "against his employer", it is readily apparent that the legislature intended that rights against third party tortfeasors would not be affected by the employee accepting compensation, as was the case under the *Moseley* decision.

Moreover, it is clear that the present Arizona statute now falls within the first classification of statutes noted in *Moseley* itself, and thus *Moseley* by its own holding is not authority for construction of the present Arizona legislation.

In summary then, the present Arizona legislation:

(1) Allows the injured party to receive from the compensation carrier the amounts applicable under the workmen's compensation laws;

(2) Allows the injured party at the same time to maintain an action against the alleged third party tortfeasor for the full measure of the damages suffered;

(3) Allows the compensation carrier a lien on the amount of the injured

party's recovery or settlement to the extent of the amount paid by the compensation carrier under the provisions of the workmen's compensation law; and,

(4) Allows the compensation carrier, if suit is not brought by the injured party in one year, to maintain an action against the alleged third party tortfeasor for an amount not to exceed those sums paid or to be paid in the future to the injured party.

For a similar conclusion interpreting a similar statute from Tennessee, *See*, Millican v. Home Stores, Inc., 197 Tenn. 93, 270 S.W.2d 372 (1954).

What, then, is the effect of the failure of the injured party to file suit within the one year period? We hold that insofar as the amount of liability of the alleged third party tortfeasor is concerned, there is no effect. Keeping in mind that the workmen's compensation laws were enacted for the purpose of regulating conduct between the employee and his employer and do not purport to give rights to third parties, it would appear logical that the third party should not be able to limit the amount of his liability by reference to the Act. To hold, as contended by the defendant, that A.R.S. § 23–1023 imposes a one year absolute statute of limitations on an injured workman's cause of action while the general statute of limitations is two years (A.R.S. § 12–542) is to confer on the alleged tortfeasor a benefit not logically within the purview of the Workmen's Compensation Act and is directly contrary to what, in our opinion, the 1969 amendment intended to remedy.

■ In our opinion, A.R.S. § 23–1023, subsec. B, was intended by the legislature merely to regulate, as between the injured workman or his dependents and the workmen's compensation carrier, the right to conduct anticipated litigation against alleg-

edly negligent third parties. In order to avoid the possibility of double recovery by the injured workman, the insurance carrier is given, by legislation, a lien on the recovery of the injured workman who institutes his action within one year against the tortfeasor, in an amount equal to the compensation and medical benefits actually paid by the carrier. On the other hand, to protect the solvency of the carrier and to avoid the possibility that no action would ever be instituted against the third party tortfeasor, the legislation provides that the insurance carrier, after a lapse of one year, may maintain an action against that third-party tortfeasor. To vest this right to maintain the cause of action in the insurance carrier, the legislature utilized the words "the claim against such other persons shall be deemed assigned." This does not mean that the amount of the liability of the third party tortfeasor will diminish after one year, it merely means that after one year, as between the injured workman and the insurance carrier, the right to maintain that action against the tortfeasor passes to the carrier.

■ Can the insurance carrier reassign the right to maintain this action back to the injured workman? When it is understood that the only right the statute confers on the insurance carrier is the right to maintain action in a limited amount, we see no reason why such a right cannot be reassigned, especially when the statute confers on the carrier the greater power to "prosecute or compromise" the claim. Krueger v. Merriman Electric, 29 Colo. App. 492, 488 P.2d 288 (1971). Moreover, contrary to defendant's contention that such an assignment of a tort claim is against public policy, it would appear that the reasons for the general rule against assignment of tort actions for personal injuries do not apply in this case. The reason most generally expressed for disallowing the assignment of tort actions for personal injuries is that the trafficking in actions for pain and suffering by unscrupulous

persons should not take place. Harleysville Mutual Insurance Co. v. Lea, 2 Ariz. App. 538, 410 P.2d 495 (1966). Such a reason does not appear where the assignment by the compensation carrier is to the very party who experienced the pain and suffering. We therefore hold that the reassignment by the compensation carrier to the plaintiffs in this case is valid.

However, the statutory scheme which prevails in Arizona does provide some procedural protection to the alleged third party tortfeasor: (1) The third party tortfeasor cannot be subject to the splitting of the cause of action against it; and (2) in the event the injured workman chooses not to bring an action at any time, or the insurance carrier refuses to reassign the action back to the injured workman after one year, the amount of liability of the third party tortfeasor may be limited to the amount of the carrier obligation. It is important to point out, however, that whether the incidental benefit of limited liability is bestowed upon the tortfeasor, lies not in the control of the tortfeasor, but depends on the choice of the injured workman and the insurance carrier—the total liability of the tortfeasor remains exposed, as with any other tortfeasor, for the full two year statute of limitation period.

We do not decide in this case what effect, if any, the filing of an action by the compensation carrier in this case against the defendants after the granting of the summary judgment may have. We merely hold that at the time defendants obtained a summary judgment, plaintiffs held a valid assignment of the compensation carrier rights and had a valid subsisting claim against the defendants.

The judgment of the trial court is reversed and the matter remanded for further proceedings.

EUBANK, P. J., and HAIRE, J., concur.