753 P.2d 1162

Kenneth J. SMITH and Peggy A. Smith, husband and wife, Plaintiffs/Appellants,

v.

David L. PAYNE, D.O., and Jane Doe Payne, his wife; Robert H. Istell, D.O., and Jane Doe Istell, his wife; Albert F. Olivier, M.D., and Jane Doe Olivier, his wife, Defendants/Appellees.

No. CV-87-0220-PR.

Supreme Court of Arizona.

April 21, 1988.

Gilcrease & Martin by Glynn W. Gilcrease, Jr., Tempe, for plaintiffs/appellants.

Jones, Skelton & Hochuli by J. Russell Skelton, Bruce D. Crawford, Phoenix, for defendants/appellees Payne.

Teilborg, Sanders & Parks by Stephen P. Forrest, John T. Crotty, Phoenix, for defendants/appellees Istell.

Snell & Wilmer by Lonnie J. Williams, Jr., Robert W. Haskin, Jr., Eileen J. Moore, Phoenix, for defendants/appellees Olivier.

FELDMAN, Vice Chief Justice.

Kenneth H. Smith (Smith) seeks review of a court of appeals' decision holding that the settlement agreement he made with his employer and its industrial insurance carrier was ineffective under A.R.S. § 23–1023(B) as a reassignment of Smith's third-party damage claim for medical malpractice. *Smith v. Payne*, No. 1 CA–CIV 8823 (Ariz.Ct.App. Apr. 21, 1987) (memorandum decision). Because this decision conflicts with that rendered by the court of appeals in *Ducksworth v. Towmotor Corp.*, 153 Ariz. 330, 736 P.2d 813 (App.1987), we granted review. *See* Rule 23(c), Ariz.R.Civ. App.P., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## STATEMENT OF FACTS

The operative facts are undisputed. Smith, an employee of Truly Nolen, Inc., was injured on June 30, 1981 while unloading a truck owned by Roadway Express, Inc. Following the injury, Smith was treated by defendants David L. Payne, D.O., Robert H. Istell, D.O., and Albert F. Olivier, M.D. In November 1981, during the course of this treatment, Smith's lower right leg was amputated. Smith claims that the amputation was the result of defendants' malpractice in treating his industrial injury.

In October 1981 Smith had filed a workers' compensation claim with his employer's industrial insurance carrier, Mission Insurance Company. He settled the claim in April 1982 according to the terms of an "Agreement re Settlement" with his employer and the insurance carrier. The agreement recognized that there was a legitimate dispute as to the compensability of

Smith's injuries. In consideration of his release of all workers' compensation claims, Mission paid Smith $15,000 and asserted a lien on any tort recovery Smith might have from third parties civilly liable either for the initial injuries or for the "aggravation or worsening of the condition resulting therefrom." In express recognition of the uncertainties inherent in any third-party action, the agreement limited the lien to ten percent of the total recovery.

On June 2, 1982, Smith filed a civil tort action against Roadway Express and Don Schwanbeck as third parties allegedly responsible for his injury. Smith subsequently settled with Roadway, and the suit was dismissed.

It was not until 1984 that Smith filed the present medical malpractice action.[1] The defendants moved to dismiss the case on the grounds that this was a third-party action subject to the provisions of A.R.S. § 23–1023(B): the claim had been automatically assigned to Mission one year after the cause of action accrued and Mission had not reassigned it to Smith by the time he filed this action. Smith's 1982 settlement agreement with Truly Nolen and Mission was ineffective as an assignment, defendants argued. A subsequent agreement between the same parties was also ineffective because it was entered into on August 5, 1985, nearly one year after the statute of limitations against defendant doctors had expired.[2] *See Stephens v. Textron, Inc.*, 127 Ariz. 227, 619 P.2d 736 (1980). The trial court granted defendants' motion, treating it as one for summary judgment,[3] and Smith appealed.

The court of appeals affirmed the trial court, holding, first, that an action for negligent aggravation of an industrial injury through medical malpractice is a third-party action within A.R.S. § 23–1023(B). *See Lavello v. Wilson*, 150 Ariz. 235, 722 P.2d

---

1. The statute of limitations for most tort actions is two years. A.R.S. § 12–542. The statute for medical malpractice actions is three years. A.R.S. § 12–564(A).

2. Unlike the agreement of April 1982, this "Agreement and Reassignment" contained express language of assignment of third-party claims by the employer and insurance carrier to Smith.

3. *See* Rule 12(b), Ariz.R.Civ.P., 16 A.R.S.; *Frey v. Stoneman,* 150 Ariz. 106, 109, 722 P.2d 274, 277 (1986).

962 (App.1985). The court of appeals held, second, that the April 1982 agreement contained no language which could reasonably be considered an assignment of third-party claims to Smith. Memo. decision at 9. In reaching this conclusion, the court of appeals acknowledged that *"Ducksworth* gives a much broader interpretation to the language of the settlement agreement than do we." *Id.* at 11. Thus, the court held, Smith's action was a nullity because he did not own the cause of action at the time of filing against the doctors. By the time the 1985 agreement explicitly revested the cause of action in Smith, the statute of limitations had run. Because the 1985 reassignment thus was of no force, summary judgment for the doctors was affirmed. *Id.* at 13. Smith sought review of the court of appeals' decision, and we granted his petition as to the second holding only.

## DISCUSSION

To determine whether the April 1982 "Agreement re Settlement" was effective as an assignment we consider the history and policy behind A.R.S. § 23–1023, the construction to be given implied assignments in the light of this background, and, finally, the capacity of an insurer to assign a claim it did not yet own.

### A. History and Policy Behind A.R.S. § 23–1023

The earliest version of A.R.S. § 23–1023 was enacted in 1925. It and all subsequent versions of the statute until 1965 required employees injured by the negligence of third parties to elect between the certain but limited recovery of workers' compensation benefits and the risky but potentially greater recovery of a tort action. *See* 1925 Ariz.Laws, ch. 83, § 66; Rea, *Reassignment of Third Party Tort Claims*, ARIZ. B.J., Apr.–May 1988, at ——. If employees chose the former, their third-party claim was automatically assigned to the state for the benefit of the compensation fund.

A 1965 amendment provided that employees need not forfeit workers' compensation benefits if they elected to proceed against the third-party tortfeasor. 1965 Ariz.Laws, 1st Reg.Sess., ch. 107, § 1. Instead, an industrial carrier that paid compensation benefits was given a statutory lien on the amount collectible in the employee's third-party tort action. The 1965 amendment did not address what would happen if the employee did not in fact proceed against the third party. "[T]o avoid the possibility that no action would ever be instituted against the third party," *Henshaw v. Mays,* 20 Ariz.App. 300, 306, 512 P.2d 604, 610 (1973), a 1968 amendment to A.R.S. § 23–1023 therefore provided:

> If the employee entitled to compensation under this chapter, or his dependents, does not pursue his or their remedy against such [third] person by instituting an action within *one year* after the cause of action accrues, the claim against such [third] person shall be deemed assigned to the insurance carrier....

1968 Ariz.Laws, 4th Spec.Sess., ch. 6, § 38 (emphasis added).

Inevitably, situations arose where employees who had not filed a third-party action in the year following their injury desired to do so before the two-year statute of limitations expired. Injured employees and insurance carriers created a procedure to make this possible: the carrier reassigned the claim to the employee, who filed and prosecuted the action in his or her own name, subject to the carrier's lien. This practice was expressly approved by the court of appeals in *Henshaw,* 20 Ariz.App. at 306–07, 512 P.2d at 610–11. In February 1981, however, this court declared such reassignments invalid as violating the common law principle that "an unliquidated claim for damages arising out of a tort is not assignable." *Ross v. Superior Court,* 128 Ariz. 301, 302, 625 P.2d 890, 891 (1981). Only the legislature, the court explained, "has the power to give the right of acquiring by assignment an interest in a claim to another person." *Id.* (citing *K.W. Dart Truck Co. v. Noble,* 116 Ariz. 9, 11, 567 P.2d 325, 327 (1977)).

Having created the insurance carrier's right to receive an assignment, and evidently disagreeing with the result in *Ross,* the legislature responded by giving the carrier

the right to reassign the third-party claim to the injured employee. *See* ARIZ. SENATE COMM. ON THE JUDICIARY, 35TH LEGIS., 1ST REG.SESS., MINUTES OF APRIL 7, 1981. As amended in April 1981, A.R.S. § 23–1023(B) now provides that a third-party claim assigned by operation of law to the insurance carrier

> may be prosecuted or compromised by the insurance carrier ... or may be reassigned in its entirety to the employee or his dependents. After the reassignment, the employee entitled to compensation, or his dependents, shall have the same rights to pursue the claim as if it had been filed within the first year.

1981 Ariz.Laws, 1st Reg.Sess., ch. 226, § 1.

In construing A.R.S. § 23–1023 throughout this evolutionary process, Arizona courts have spoken with one voice about its central purposes. In *State ex rel. Industrial Commission v. Pressley*, 74 Ariz. 412, 418, 250 P.2d 992, 996 (1952), we announced:

> The [Workers' Compensation] Act was enacted primarily for the benefit of the injured employee and his dependents, and secondarily for the benefit of the employer. The Act deals solely with the employer-employee relationship. No mention is made of third party tortfeasors, except in [§ 23–1023] which provide[s] the employee's right to sue a third party but confers no rights on such third parties. The public policy has been, first, to protect the employee whose injury arose in and out of the course of employment; and second, to protect the Compensation fund administered by the commission, which indirectly benefits the employer.

(Citations omitted.) *Stephens*, 127 Ariz. at 230, 619 P.2d at 739, similarly viewed § 23–1023(B) as "a means by which the solvency of the Compensation Fund may be maintained consistent with lower premiums to the insured employers." *Accord Firestone Tire & Rubber Co. v. Brown*, 139 Ariz. 330, 332, 678 P.2d 515, 517 (App. 1983).

■ It follows from these statements of public policy that the statutory provisions for assignment and reassignment were not intended to benefit third-party tortfeasors nor relieve them from liability. 101 C.J.S. *Workmen's Compensation* § 994, at 515 (1958). *See also Pressley*, 74 Ariz. at 420, 250 P.2d at 997. In *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 641 P.2d 1275 (1982), we upheld the constitutionality of the 1981 amendment to A.R.S. § 23–1023(B). We reached this result despite the fact that it permitted an employee to bring a third-party claim otherwise effectively barred by that section's automatic assignment provisions and despite the fact that it exposed tortfeasors to damages for pain and suffering in cases where, prior to the amendment, there may have been no such exposure once the claim was assigned to the carrier. As we explained,

> The Workmen's Compensation Act merely provided that as between the employee and the employer, the employee was required to bring suit within one year. This [abridgement of the two-year general statute of limitations] was not done to benefit the negligent third party, but to protect the employer or his carrier and insure that they would have sufficient time to enforce their subrogated rights to proceed against a negligent third party.

*Id.* at 439, 641 P.2d at 1283.

In a case arising before *Ross* and the 1981 amendment, the court of appeals had similarly responded to a defendant's argument that the carrier's reassignment was limited to the amount of its liability, a figure that did not include pain or suffering damages:

> Keeping in mind that the workmen's compensation laws were enacted for the purpose of regulating conduct between the employee and his employer and do not purport to give rights to third parties, it would appear logical that the third party should not be able to limit his liability by reference to the Act.
>
> \* \* \* \* \* \*
>
> ... [W]hether the incidental benefit of limited liability is bestowed upon the tortfeasor, lies not in the control of the tortfeasor, but depends on the choice of

the injured workman and the insurance carrier....

*Henshaw,* 20 Ariz.App. at 306–07, 512 P.2d at 610–11.[4]

Having in mind the legislative objectives in providing for the assignment and reassignment of employees' tort claims, we turn now to the question of implied assignments.

## B. Construction of Implied Assignments

*Ducksworth* is the latest court of appeals' opinion to give expression to the policies underlying A.R.S. § 23–1023. That case involved the death of a refuse container repairman in an industrial accident on October 14, 1982. His mother, the plaintiff, thereafter filed a claim for death benefits with the Industrial Commission. In February 1984 she signed a settlement agreement with her son's employer providing

> that if [plaintiff], by any means whatsoever, becomes entitled to any monies because of any lawsuits arising out of the ... death of her son, then, in that event, the [employer] shall be entitled to a credit [equal to the amount of the settlement] against any recovery or payments received by trial or settlement that the applicant may become entitled by reason of the aforesaid accident.

153 Ariz. at 331, 736 P.2d at 814.

On October 10, 1984 the mother commenced a third-party action for negligence and strict liability against the defendants. Her complaint was dismissed for failure to obtain a reassignment of the claim under A.R.S. § 23–1023.

Analyzing the purposes of the statute and the language of the settlement agreement, the court of appeals reversed. It found in the above-quoted clause, and particularly in the phrase "recovery ... the applicant may become entitled [to]," the parties' "obvious intent" that a third-party action be brought and that the employer share in the recovery to the extent of the benefits it had paid. *Id.* at 332, 736 P.2d at 815. It held that the clause "is most fairly construed as a reassignment by the [employer] of its claims against third parties to the plaintiff." *Id.* We approve the *Ducksworth* holding and believe that it governs the construction of the settlement agreement before us.

■ In pertinent part the 1982 agreement in the present case provided:

> That KENNETH H. SMITH as well as TRULY NOLEN, his employer, and MISSION INSURANCE COMPANY, [the compensation insurance carrier], being aware that various other persons ... may be civilly liable for the injuries initially sustained by [SMITH], or *may be civilly liable for aggravation or worsening of the condition resulting therefrom;* ... and further recognizing that the sums paid herein have been or are

---

4. This line of Arizona cases is in accord with the generally accepted theory of third-party actions in workers' compensation cases:

> The concept underlying [such] actions is the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer.... [E]very mature loss-adjusting mechanism must look in two directions: it must make the injured person whole, and it must also seek out the true wrongdoer whenever possible. While compensation law, in its social legislation aspect, is almost entirely preoccupied with the former function, it is not so devoid of moral content as to overlook the latter. It should never be forgotten that the distortions of our old-fashioned fault concepts that have been thought advisable for reasons of social policy [such as a master's vicarious liability for the torts of his servant] are exclusively limited to providing an assured recovery for the injured person; they have never gone on

> —once the injured person was made whole— to change the rules on how the ultimate burden was borne....
>
> Similarly, in compensation law, social policy has dispensed with fault concepts to the extent necessary to ensure an automatic recovery by the injured workman; but the disregard of fault goes no further than to accomplish that object, and, with payment of the workman assured, the quest of the law for the actual wrongdoer may proceed in the usual way.
>
> So, it is elementary that if a stranger's negligence was the cause of injury to claimant in the course of employment, the stranger should not be absolved of his normal obligation to pay damages for such an injury.

2A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 71.10, at 14–1 to –2 (1987) (citing, among other cases, *Firestone Tire & Rubber Co. v. Brown*).

being paid in settlement of a present and existing claim, the parties recognize, therefore, the applicability hereto of A.R. S. § 23–1023(C) in its proviso that the carrier ... *"shall have a lien on the amount actually collectible from such other person"*, in essence, to the extent of the [$15,000] paid hereunder....

(Emphasis added.) This clause's provision that the carrier shall have a lien against "the amount actually collectible" from other persons who "may be civilly liable" contemplates a third-party action as clearly as does the clause in *Ducksworth*. It is true that at the time Smith entered this agreement, two months remained in which he could have filed a third-party action before his claim was automatically assigned to the carrier. Indeed, Smith did commence an action during this period against those whom he believed "civilly liable for the injuries initially sustained." But we believe that the language of the agreement is equally susceptible to the interpretation that it assigned to Smith the carrier's future right to pursue other third-party claims. Thus when Smith filed suit against defendants, whom he believed "civilly liable for aggravation or worsening" of his industrial injury, in the contemplation of the employer and the insurance carrier he was the rightful owner of the claim.[5]

## C. Capacity to Assign a Future Right

The defendants in this action have attempted to distinguish the settlement agreement in *Ducksworth* not only on the basis that its language is "somewhat different," but also on the basis that it was entered into *after* plaintiff's claim had passed by operation of A.R.S. § 23–1023 to the employer. Just as we find the linguistic differences between the two agreements insubstantial, we find the altered sequence of assignment and reassignment in this case nondeterminative.

■ It is an accepted principle of contract law that once a contract has been made the rights created by it are assignable, "even though the promised performance is deferred to some definite or indefinite future date, or the duty to render it is subject to some condition precedent." 4 A. Corbin, Corbin on Contracts § 874, at 501 (1951). In *Commercial Life Insurance Co. v. Wright*, 64 Ariz. 129, 166 P.2d 943 (1946), this court upheld the validity of an insurance company's plan to sell its stock in accordance with a certain trust agreement. The trust agreement required that the trustors assign to the trustee bank such future dividends as might become payable to them and that the dividends be used for the eventual purchase, in the trustors' names, of the insurance company's stock. In finding that the agreement was "without taint of illegality," the court adopted the common law rule that "an assignment of a debt not yet due and which may never become due is effective if it appears that there is an existing contract or employment out of which the debt may arise" at some future time. *Id.* at 141, 166 P.2d at 950 (citing 2 S. WILLISTON ON CONTRACTS at 1183 (1936)). We, too, rely on the common law rule in deciding that the "reassignment" of a claim by an insurance carrier within one year of the industrial injury is effective under the provisions of A.R.S. § 23–1023(B).

5. *While there is no doubt that the tortfeasor has standing to challenge the employee's right to bring the action,* we do not at this time analyze the tortfeasor's standing to dispute the *interpretation* given the settlement agreement by the employee and insurance carrier. We note, however, that in reluctantly concluding it could *not* deny standing, the *Ducksworth* court failed to distinguish the cases it cited for this proposition. Both *Stephens v. Textron, Inc.* and *Lawson v. Arnold*, 137 Ariz. 304, 670 P.2d 409 (App. 1983), involved third-party actions filed by the injured employee or his dependents within the statute of limitations, where the reassignments were not executed until after the statute had run. Both plaintiffs argued for the retroactivity of the reassignment to the date of the filing. In rejecting this argument, *Stephens* and *Lawson* explained that the parties' intent to make the assignment retroactive "may have some meaning between them, but it is meaningless as to third parties." 127 Ariz. at 230, 619 P.2d at 739; 137 Ariz. at 306, 670 P.2d at 411. *Stephens* and *Lawson* thus stand for the proposition that the tortfeasor may challenge the employee's right to file a claim which has been assigned by statute to the insurance carrier. They are silent, however, on the tortfeasor's right to contest the interpretation given an agreement by the parties to that agreement.

512

 We perceive no reason why an injured employee, his employer, and its compensation carrier may not agree that if the employee's tort claim is subsequently assigned by operation of law, it will be considered reassigned as permitted by the same law. We believe the statutory objectives of the reassignment system presently embodied in A.R.S. § 23–1023 are better served by such an interpretation than by any formalistic rule that would approve reassignments made one year after accrual of the action and invalidate those made one day earlier. We recognize, of course, that a claim filed one day too late may be barred by the statute of limitations. However, we are not dealing here with a reassignment made "one day too late" but, rather, one made "one day too early." In the final analysis, A.R.S. § 23–1023 is not a statute of limitations, the tortfeasors can show no prejudice because the reassignment was made "too early" and, in any case, they have questionable standing to raise the interpretation issue at all. *See* note 5.

## CONCLUSION

 A motion for summary judgment should be granted only where there is no genuine issue as to any material fact. Rule 56(c), Ariz.R.Civ.P., 16 A.R.S.; *Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984). Upon review, the facts of a case must be considered in a light most favorable to the party opposing the motion for summary judgment. *Farmers Insurance Co. v. Vagnozzi,* 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983). Because we have held that the April 1982 agreement among Smith, his employer, and the employer's insurance carrier could properly be read as a valid "reassignment" of the carrier's future right to pursue a claim against defendants, we conclude that defendants' motion for summary judgment was erroneously granted. The decision of the court of appeals is vacated and the case remanded to the trial court for proceedings consistent with this opinion.

GORDON, C.J., and CAMERON, HOLOHAN, and MOELLER, JJ., concur.