904 P.2d 456

Faith AITKEN, Petitioner Employee,

v.

INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Amphitheater Public Schools, Respondent Employer,

and

Unigard Insurance Company, Respondent Carrier.

No. CV–92–0257–PR.

Supreme Court of Arizona.

Oct. 17, 1995.

Dee–Dee Samet, P.C. by Dee–Dee Samet and Arthur V. Gage, Tucson, and Gerald T. Barton, Tucson, and Robert Q. Hoyt, P.C. by Robert Q. Hoyt, Tucson, for Petitioner.

Bury, Moeller, Humphrey & O'Meara by J. Michael Moeller and Roger W. Frazier, Tucson, for Unigard Insurance and Amphitheater Public Schools.

The Industrial Commission of Arizona by Anita R. Valainis, Chief Counsel, Phoenix.

Plattner Verderame, P.C. by Frank Verderame, Phoenix, and The Langerman Law Offices by Amy G. Langerman, Phoenix, for Amicus Arizona Trial Lawyers Association.

J. Stephen Dix, P.C. by Robert J. Forman, Tucson, for Amicus Southern Arizona Workers' Compensation Claimant's Attorneys Association.

## OPINION

ZLAKET, Justice.

Petitioner, Faith Aitken, while in the scope of her employment with Amphitheater School District, was seriously injured when she fell in an area where a sidewalk had been removed by Maya Construction Company. She filed a workers' compensation claim and received $28,929.70 in benefits from her employer's carrier, Unigard Insurance Co. She also filed a third party suit against Maya, which responded by alleging her contributory

negligence and naming the school district a nonparty at fault.

A jury in the third party action assessed total damages of $319,292 and apportioned responsibility as follows: 65% to Maya, 25% to Amphitheater, and 10% to Aitken. After reducing the award by the employer's and Aitken's percentages of fault, the court entered judgment against Maya in the amount of $207,350.[1] From this sum, petitioner reimbursed Unigard $28,929.70 for benefits previously collected. The carrier thereafter claimed a lien credit against future compensation of $74,466.54, the amount remaining from the recovery after deductions for attorneys' fees and costs.

Aitken asserted that both the lien and the credit were excessive. She also challenged their constitutionality under Article 18, Section 6 ("The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."); Article 18, Section 8 (requiring the establishment of "a just and humane compensation law ... for the relief and protection of [injured or deceased] workmen, their widows, children or dependents ... from the burdensome, expensive and litigious remedies for injuries to or death of such workmen, now existing in the State of Arizona, and producing uncertain and unequal compensation therefor"); and Article 2, Section 31 ("No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person.") of the Arizona Constitution. More particularly, she argued that the lien statute, A.R.S. § 23–1023(C), operates in combination with a more recent measure abolishing joint and several liability, A.R.S. § 12–2506, to produce an unconstitutional result.

The administrative law judge found in favor of the carrier, holding that the lien could not be reduced merely because the insured employer shared responsibility for petitioner's injuries. The court of appeals affirmed,

finding that an injured worker who has received compensation must fully reimburse the carrier even though the total damages assessed in a third party action have been diminished by the employer's percentage of fault. *Aitken v. Industrial Comm'n*, 173 Ariz. 300, 302, 842 P.2d 1313, 1315 (Ct.App. 1992). We granted review.

### A. Constitutionality of A.R.S. § 23–1023

[1–3] We "usually will not determine the constitutionality of a statute when the case can be decided without ruling upon such question." *State v. Church*, 109 Ariz. 39, 41, 504 P.2d 940, 942 (1973).

> Indeed, it is well-settled that the constitutionality of a statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the suit in which the constitutionality of such statute has been drawn in question, and such rule should not be departed from except for strong reason and under extraordinary circumstances.

*County of Maricopa v. Anderson*, 81 Ariz. 339, 341, 306 P.2d 268, 269 (1957) (quoting 16 C.J.S. *Constitutional Law* § 94, at 307). We do not find these circumstances to be present here.

■ Consistent with our "duty to construe a statute so as to give it, if possible, a reasonable and constitutional meaning," *Arizona Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981), we must make every effort to harmonize these legislative acts. Fortunately, because the underlying purposes of the lien statute and the broader objectives of the workers' compensation scheme are clear and well understood, we are able to reach a reasonable interpretation of the law that comports with legislative intent without having to address the foregoing constitutional challenges.

### B. Interpreting the Lien Statute

■ In addition to collecting workers' compensation benefits, an injured employee

---

1. The reduction amounted to $79,823 for Amphitheater's negligence and $31,929 for Aitken's. The reader with an eye for detail may note that when the sum of these two numbers is subtracted from the verdict, the remainder is $207,540 rather than the judgment amount of $207,350. We can find no explanation in the record for this minor discrepancy, but it is unimportant to our decision.

may sue a third party who caused or contributed to his or her injuries. A.R.S. § 23–1023(A). If the employee successfully recovers against the third party tortfeasor, § 23–1023(C) allows the employer or its carrier to assert a lien on the recovery. This lien applies to "the total recovery less the reasonable and necessary expenses, including attorneys' fees." A.R.S. § 23–1023(C). Before the legislature abolished or severely restricted joint and several liability in A.R.S. § 12–2506, a literal reading of the lien statute did not detract from the overall purpose of the workers' compensation scheme, which is to protect injured employees. *See Stephens v. Textron, Inc.*, 127 Ariz. 227, 230, 619 P.2d 736, 739 (1980); *State ex rel. Industrial Comm'n v. Pressley*, 74 Ariz. 412, 418, 250 P.2d 992, 996 (1952). Those who paid compensation obtained liens on "total" recoveries from third party tortfeasors who were, under the law existing at the time, responsible for *all* damages regardless of how big or small their respective portions of liability might have been. Thus, even when employers shared responsibility for the injuries, their employees received a full measure of damages from third parties whose conduct contributed to the result.

■■■ The law has changed. Joint and several liability has been effectively abrogated. Moreover, in *Dietz v. General Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991), we held that under A.R.S. § 12–2506(B) an employer liable for workers' compensation can be designated a nonparty at fault in a claimant's suit against a third party. Therefore, judges or juries in such cases must now assign, when appropriate, a percentage of fault to the employer. As we recognized in *Dietz*, although this method of apportionment is in accord with the overall legislative objective of holding parties liable only for their own wrongdoing, it may work an injustice on claimants in the lien context. *Id.* at 511, 821 P.2d at 172. Once employees accept compensation, they give up their rights to sue negli-

gent employers. *See* A.R.S. § 23–1022(A). Yet, without an equitable adjustment or apportionment, employers and their carriers will continue to obtain full liens against third party recoveries even where those awards have been effectively reduced by virtue of the employers' own fault. The result is a diminution of the injured claimant's total recovery that appears quite inconsistent with the overall goal of Arizona's compensation scheme.[2]

We are not alone in this view. Our court of appeals pointedly questioned "the equity of this outcome—that the employee, whose damages have already been reduced by 25%, reflecting Amphitheater's proportionate share of fault, must nevertheless reimburse Amphitheater's carrier for 100% of the benefits received." *Aitken*, 173 Ariz. at 302, 842 P.2d at 1315. And in *Sullivan v. Scoular Grain Co.*, 853 P.2d 877 (Utah 1993), where the court held that Utah's Liability Reform Act requires a jury to apportion the fault of a plaintiff's employer even though the latter is immune from suit under workers' compensation laws, the majority candidly noted:

> Plaintiff also protests the detrimental effect on his recovery created by the employer reimbursement provisions of the Workers' Compensation Act. Section 35–1–62 provides for an employer or insurer to obtain reimbursement for any payments made to an injured employee. This lien is not reduced in any respect by the amount by which the employer's act or omission contributed to the employee's injuries....

> Consequently, when a verdict is granted to the plaintiff in an amount equal to or greater than the employer's workers' compensation payments, the Act *allows an at-fault employer to escape liability altogether at the expense of the injured employee. We agree with plaintiff that this result is inequitable,* but the effect of the statutory language is clear.

*Id.* at 883 (emphasis added) (footnote omitted).

---

2. In the instant case, for example, not only are the Aitkens unable to sue Amphitheater to recover the 25% of their damages attributable to the school district's conduct, but under the appellate court's present construction of A.R.S. § 23–1023(C), they must fully reimburse the district's carrier, Unigard, for benefits already received. Moreover, Unigard is able to assert a lien against the Aitkens' recovery for compensation benefits it may be obligated to pay in the future, without any deduction for its insured's contribution to the injuries.

The dissent in *Sullivan* expressed the thought more strongly:

> Thus, not only is the plaintiff made responsible for the employer's proportionate share of fault, but he must also reimburse his employer out of his diminished recovery for any workers' compensation benefits received. *This is not only unjust and inequitable, but might well be unconstitutional.*

853 P.2d at 887 (Stewart, J., dissenting) (emphasis added).

In *Taylor v. Delgarno,* 100 N.M. 138, 667 P.2d 445 (1983), the Supreme Court of New Mexico, by a 3–2 vote, opted to leave a similar issue to the legislature. The dissenting justices, however, saw no reason for judicial inaction and commented:

> We would therefore hold that the comparative negligence doctrine should be read in conjunction with the workmen's compensation statutes to require that an employer or its workmen's compensation carrier should be reimbursed from monies recovered by the injured workman from a third-party tort-feasor only in those instances where the employer or its insurer has paid more than its proportionate share of the employee's damages. On no occasion would the employer or its insurer be subjected to greater liability than that allowed by the Workmen's Compensation Act. There should, of course, be no reimbursement in those cases in which the employer's share of liability is greater than or equal to the amounts paid under workmen's compensation because such reimbursement would be at the expense of the injured worker. Reimbursement to a negligent employer or its insurer should occur only when the amounts paid in workmen's compensation benefits exceed the employer's proportionate share of liability and the employee is able to recover additional sums from a third-party tort-feasor because only in this instance would the employee enjoy a double recovery. Reimbursement to a negligent employer or its insurer in any other instance would be at the expense of the injured workman and would allow a negligent employer to escape

even the limited liability imposed by the Workmen's Compensation Act.

100 N.M. at 142–43, 667 P.2d at 449–50 (Payne, C.J., and Sosa, J., dissenting).

 We concur that this issue is capable of judicial resolution, particularly given our past knowledge of and experience with the lien statute. *See, e.g., Carter v. Industrial Comm'n,* 182 Ariz. 128, 893 P.2d 1291 (1995); *Liberty Mut. Ins. Co. v. Western Cas. & Sur. Co.,* 111 Ariz. 259, 527 P.2d 1091 (1974). Here, we do not deal with some novel, untested law. We know exactly how A.R.S. § 23–1023(C) is supposed to operate and what it was designed to accomplish because we have been working with and applying it since its enactment in the mid–1960s. We agree with the court of appeals that when the Arizona legislature passed this statute, it did not anticipate the manner in which compensation liens would operate outside the universe of joint and several liability,[3] which continued to exist as the law in this state for another twenty-two years. Nor is there evidence that the legislature considered this question in 1987 when A.R.S. § 12–2506 was adopted. In fact, some might argue that *we* created the "problem" by our 1991 decision in *Dietz* and, therefore, that it should be amenable to a judicial solution. In any event, we cannot agree with the suggestion that our courts are powerless to compensate for the clearly unintended consequences of these recent developments in the law, by which a reimbursement mechanism that has been fairly and successfully applied for decades is effectively subverted. Courts should not limit themselves to the rigid construction or application of a statute when significant changes in circumstance since its enactment produce results plainly contrary to legislative intent. *Consumers Union v. Heimann,* 589 F.2d 531, 534 (D.C.Cir.1978) (citing *Perry v. Commerce Loan Co.,* 383 U.S. 392, 397–400, 86 S.Ct. 852, 855–57, 15 L.Ed.2d 827 (1966)). "Construing a statute in light of subsequent events is fully consistent with our obligation to carry out Congress['s] intent at the time of enactment." *Idaho v. Hodel,* 814 F.2d 1288, 1298 (9th Cir.) (Reinhardt, J., concurring and

---

3. *See Aitken,* 173 Ariz. at 303, 842 P.2d at 1316.

**392**

dissenting), *cert. denied sub nom. Coeur D'Alene Tribe v. Idaho*, 484 U.S. 854, 108 S.Ct. 159, 98 L.Ed.2d 114 (1987). It is clear that in adopting A.R.S. § 23–1023, the legislature wanted to encourage suits against culpable third parties, thereby relieving some of the compensation burden on employers, their insurance carriers, and the system. Liens against third party awards not only facilitate the spreading of loss but provide a valuable safeguard against double recoveries by claimants. *Henshaw v. Mays*, 20 Ariz.App. 300, 306, 512 P.2d 604, 610 (1973).

 Thus, a reasonable balance between the rights of employer and employee, consistent with the underlying goals of the compensation scheme, has existed for more than twenty years. That balance appears to have been skewed by the almost complete abolition of joint and several liability. We recognized this dilemma in *Dietz* and specifically left open the possibility of limiting a carrier's lien when its insured, the employer, is found at fault to some degree. 169 Ariz. at 511, 821 P.2d at 172. We now hold that a carrier may assert a lien on a third party recovery only to the extent that the compensation benefits paid exceed the employer's proportionate share of the total damages fixed by verdict in the action. In doing so, we are particularly mindful of the "context, subject matter, and effects and consequences of the statute." *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). We interpret and apply laws so as to further "the general legislative goals that can be adduced from the body of legislation in question." *Dietz*, 169 Ariz. at 510, 821 P.2d at 171. One of the fundamental objectives of the legislature in abolishing joint and several liability was to make each tortfeasor responsible for his or her share of fault. *Id.*

 Moreover, we have consistently applied workers' compensation laws liberally, remedially, and in a manner ensuring that injured employees receive maximum available benefits. *See, e.g., English v. Industrial Comm'n*, 73 Ariz. 86, 89, 237 P.2d 815, 817 (1951); *Pressley v. Industrial Comm'n*, 73 Ariz. 22, 28, 236 P.2d 1011, 1015 (1951). The overriding theme of the system, as evidenced by our constitution, statutes, and case law,

has been to preserve a claimant's opportunity to be made whole to the fullest possible extent—nothing more nor less.

 At the same time, the lien statute acts to promote fairness among all parties. That goal is not served by allowing "an employer to benefit from his own wrong, at the expense of the injured worker," nor is such a scenario "consistent with the principles of comparative fault." *Clark v. Pacificorp*, 118 Wash.2d 167, 822 P.2d 162, 174 (1991). There is no indication that the statute was intended to result in a windfall for any party, be it the employee, employer, or insurance carrier. We should therefore continue to interpret it in a manner that achieves the legislative objectives of distributing responsibility according to fault and avoiding double recovery while ensuring full and fair recompense. Because any other interpretation "would be at the expense of the injured workman," *Taylor*, 100 N.M. at 143, 667 P.2d at 450 (Payne, C.J., and Sosa, J., dissenting), we conclude that the lien and any future credit should apply only to the extent that compensation benefits paid exceed the negligent employer's proportionate share of the total damages awarded in the third party action. In other words, the employee should not be forced to endure the combined effect of first having his or her award reduced by reason of the employer's fault, and thereafter having to satisfy a lien against this diminished recovery in favor of the employer and its carrier to the full extent of compensation benefits provided. If injured claimants stand to gain little or nothing by invoking both the workers' compensation and the tort systems, there will scarcely be any incentive for them to pursue responsible third parties.

Respondents argue that we should uphold the right to complete reimbursement because a purpose of the lien statute is to protect the compensation fund and prevent workers from becoming public charges. If we do not allow the employer or its carrier to recoup all benefits paid, respondents assert, the compensation fund might soon be exhausted. There is, however, no evidence in the record to support such a gloomy prediction. The argument also overlooks the fact that replenishing the fund was only one of the reasons

that the legislature provided for a carrier's lien. It primarily sought to prevent employees from receiving a double recovery and "to avoid the possibility that no action would ever be instituted against the third party tortfeasor." *Henshaw,* 20 Ariz.App. at 306, 512 P.2d at 610.

Respondents further claim that the language of A.R.S. § 12–2506(B) prohibits using a nonparty's fault in determining the amount of the carrier's lien. What the statute actually provides, however, is that "[a]ssessment of fault against nonparties does not subject any nonparty to *liability* in this or any other action and it may not be introduced as evidence of *liability* in any action." (Emphasis added.) Reducing the lien based on the employer's proportionate share of fault does not subject the employer to any liability; it merely affects the amount of reimbursement the employer or its carrier receives. *See Taylor,* 100 N.M. at 142, 667 P.2d at 449 (Payne, C.J., and Sosa, J., dissenting).

Respondents finally assert, as the court of appeals concluded, that the proposed construction of the lien statute injects fault into a no-fault scheme. However, in the context of efficiently and expeditiously providing compensation to injured workers, which is what the system is designed to do, fault remains no consideration. In third party suits, fault has *always* been a matter of inquiry and remains so. Despite the fact that it is now appropriate for fact finders to apportion fault among all of the various parties and nonparties in tort actions, today's ruling changes none of the traditional principles governing the payment of compensation; only the amount of reimbursement is affected. But even assuming that, to a limited extent, fault is brought into play by such an adjustment, the result is nevertheless reasonable and compatible with the need for a "just and humane compensation law in the State of Arizona." Ariz. Const. art. 18, § 8.

In adopting a rule of equitable apportionment, we are able to avoid a constitutional attack on the lien statute and preserve its primary justification—the fullest available recovery without double recovery. Respondents' suggestion that our decision constitutes a rewriting of A.R.S. § 23–1023 is with-

out merit. We are simply making it function as closely as possible to the way in which it has always operated and in accord with what appears to have been the intent of the legislature at the time of its passage. It makes little sense to say that rules of construction prevent us from applying a statute in a manner consistent with its application and use these past many years. We find nothing to indicate that the legislature was unhappy with or intended to change the way in which the lien statute had been working. However, if our decision today misconstrues legislative intent, that body can tell us so by taking appropriate action.

The award is set aside, the opinion of the court of appeals is vacated, and the case is remanded.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.