947 P.2d 917

Edward MORETTO, Plaintiff–Appellant,

v.

SAMARITAN HEALTH SYSTEM, an Arizona corporation; authorized and d/b/a Havasu Samaritan Regional Hospital, Defendant–Appellee.

No. 1 CA–CV 97–0079.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 30, 1997.

Law Offices of Keith S. Knochel, P.C. by Keith S. Knochel, Janelle C. Johnson, Bullhead City, for Plaintiff–Appellant.

Fadell, Cheney & Burt by Brian R. Burt, Phoenix, for Defendant–Appellee.

## OPINION

VOSS, Judge.

Plaintiff-Appellant Edward Moretto ("Moretto") appeals from summary judgment for Defendant–Appellee Samaritan Health System ("Samaritan"). Moretto had sought malpractice damages from Samaritan alleging that a physical therapist treating his compensable industrial knee injury negligently caused a secondary back injury. Two issues are presented. First, did procedural irregularities deprive Moretto of a reasonable opportunity to present facts to oppose summary judgment? Second, does Ariz.Rev. Stat. Ann. ("A.R.S.") subsection 23–1023(B) (1995), as interpreted in *Lavello v. Wilson*, 150 Ariz. 235, 722 P.2d 962 (App.1985), apply to bar Moretto's civil cause of action for the negligence of a third party when Moretto did not claim or accept workers' compensation benefits for the secondary back injury?

We conclude that Moretto failed to preserve any procedural issue by not objecting below and, furthermore, that any irregularity would be harmless if Samaritan's interpretation of *Lavello* is correct. However, we also conclude that Samaritan's interpretation is incorrect because a claim for or acceptance of workers' compensation benefits for the secondary injury is necessary for subsection 23–1023(B) to apply. We accordingly reverse summary judgment for Samaritan and remand to the trial court.

## PROCEDURAL AND FACTUAL HISTORY

On November 3, 1995, Moretto filed a complaint concerning events occurring on July 13, 1994. Moretto alleged that he was a patient at Samaritan's hospital, that a physical therapist employed by the hospital direct-

ed Moretto to sit on a stool with wheels and negligently left him unattended to put on a leg brace and shoe, and that as he leaned forward to put on the brace and shoe, the stool slid out from under him, he fell to the floor, and he herniated a disc.

Samaritan filed an answer on January 16, 1996, raising, among other defenses, "[a]ll affirmative defenses identified in Rule 12(b)," failure to join a party under Rule 19, and failure to prosecute by the real party in interest.

Discovery ensued, but Moretto's answers to interrogatories and deposition transcript are not included in the record. Moretto's Rule 26.1 disclosure statement is part of the record as an exhibit to another document. *See generally* Rule 26.1, Ariz. R. Civ. P. (1987 & Supp.1996) (hereinafter "Rule ___"). In this statement, Moretto disclosed that he was present at Samaritan's hospital "for his daily physical therapy ... necessitated by a previous injury." The record also includes a letter by Samaritan's counsel confirming that he had received Moretto's workers' compensation claim file from the responsible carrier.

On August 30, 1996, Samaritan filed a Motion To Dismiss under Rules 12(b)(6) and 12(b)(7), asserting that Moretto had failed to state a claim upon which relief could be granted and that he was not the real-party-in-interest. Samaritan represented that Moretto had suffered a compensable industrial knee injury and was being treated for this injury when he allegedly suffered the secondary back injury. Samaritan also represented that it had found no evidence that the workers' compensation carrier responsible for the knee injury had reassigned the back injury claim to Moretto. Samaritan did not provide documentary support for these factual representations, but, based upon them, it argued that the complaint should be dismissed because Moretto filed it more than one year after the back injury had occurred. To support this argument, Samaritan cited subsection 23–1023(B) but did not cite *Lavello.*

Moretto responded by addressing the legal standards for a motion to dismiss and their applicability to a statute of limitations defense. He did not object, however, to Samaritan's factual representations that supplemented the allegations of the complaint nor did he deny the truth of these representations. Instead, he argued that Samaritan had failed to establish that Moretto had ever claimed or accepted workers' compensation benefits for the back injury. Moretto contended that without such proof, Samaritan's motion must fail: "Without a claim, there was no claim to reassign."

In its reply, Samaritan construed Moretto's response as having denied that he claimed or received workers' compensation benefits for the primary knee injury. Samaritan then quoted from Moretto's deposition to establish that Moretto had claimed and received benefits for the primary knee injury. Samaritan also for the first time cited *Lavello* for the proposition that subsection 23–1023(B) applies to a claim for medical malpractice that aggravated an industrial injury.

The trial court then heard oral argument on the "Motion To Dismiss." The court's minute entry does not mention any procedural objection by Moretto. The court ultimately ruled that *Lavello* is dispositive:

> In *Lavello,* the Court ruled that an action for negligent aggravation of an industrial injury through medical malpractice constitutes a third-party action subject to the provisions of A.R.S. 23–1023(B) [sic]. If the Plaintiff did not commence the action against the Defendants within one year of its accrual, or obtain an express reassignment of the claim from his employer's insurance carrier[,] the Court is required to enter judgment dismissing the action. IT IS SO ORDERED.

The trial court entered a final judgment indicating it had granted Samaritan's motion for summary judgment. Moretto timely appealed.

## DISCUSSION

On review, Moretto raises several issues. We consolidate them generally into procedural and substantive issues.

## A. *Procedural Irregularities*

■ Moretto asserts that procedural irregularities deprived him of a reasonable opportunity to present facts to oppose summary judgment. We agree that the procedure in this case was irregular. We disagree, however, that Moretto preserved any procedural issue for appellate review or that the irregularity was harmful if Samaritan has correctly interpreted *Lavello.*

■ The procedural irregularities include the following. A motion to dismiss tests the formal sufficiency of a claim for relief. *See, e.g., Parks v. Macro–Dynamics, Inc.,* 121 Ariz. 517, 519–20, 591 P.2d 1005, 1007–08 (App.1979); *accord* 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice And Procedure* § 1356, at 294 (2d ed.1990). This motion accordingly should be granted only when a plaintiff has pled facts that reveal a legal bar to recovery. *See* Wright & Miller, *supra* § 1357, at 344–45. If a complaint is facially sufficient but unpled facts establish a legal bar to relief, then the appropriate motion is under Rule 56. *See* Wright and Miller, *supra* § 1357, at 348–49, 358; *id.* § 1364, at 474–75; *e.g., Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718–19 (7th Cir.1993), *cert. denied,* 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994)(applying rule to statute of limitations defense); *see also* Rule 12(b); Rule 12(c); *e.g., Frey v. Stoneman,* 150 Ariz. 106, 108–09, 722 P.2d 274, 276–77 (1986) (stating general rule that consideration of evidence extrinsic to pleadings converts motion to dismiss to motion for summary judgment). Under Rule 56, an unsworn and unproven assertion of fact in a memorandum is insufficient to establish that undisputed facts entitle a movant to summary judgment. *See Prairie State Bank v. Internal Revenue Service,* 155

Ariz. 219, 221 n. 1A, 745 P.2d 966, 968 n. 1A (App.1987) (citing Rule 56(e)); *see also* Uniform Rules of Practice of the Superior Court of Arizona, Rule IV(f); *accord* Wright & Miller, *supra* § 1365, at 481; *id.* § 1366, at 499–500.

■ In the current case, Samaritan did not contend that Moretto's complaint was facially invalid.[1] Instead, it contended that unpled facts established that Moretto did not have capacity to sue when he filed the complaint and that the statute of limitations had since run so that Moretto was barred from filing a complaint.[2] Samaritan supported this contention, however, by merely asserting in its memorandum that Moretto injured his back while being treated for an industrial knee injury and had not obtained a reassignment of the back injury claim from the responsible workers' compensation carrier. This did not comply with Rule 56.[3]

Despite these irregularities, however, Moretto has no appellate remedy. To preserve an issue for appeal, an appellant generally must have raised it below. *See, e.g., Schoenfelder v. Arizona Bank,* 165 Ariz. 79, 88, 796 P.2d 881, 890 (1990). Here, Moretto had an opportunity to raise any procedural irregularity during oral argument or by motion for new trial, but he failed to do so. Therefore, he has not preserved any procedural issue for appeal.

Furthermore, Moretto does not dispute that he injured his back while being treated for a compensable industrial knee injury and that he did not obtain a reassignment of the back injury claim from the responsible workers' compensation carrier. We accordingly turn to the substantive issue.

1. Samaritan tacitly conceded this point by submitting a form of judgment referring to summary judgment rather than to dismissal under Rule 12(b).

2. Rule 12(b)(6) extends to capacity and real party in interest defenses. *See* Wright & Miller, *supra* § 1357, at 354–58; *id.* § 1359, at 423–24. Samaritan, however, also erroneously relied on Rule 12(b)(7) (failure to join party under Rule 19), which does not extend to these defenses, *see id.* § 1359, at 423–24.

3. In its reply, Samaritan referred to Moretto's deposition but did not attach relevant parts of it as an exhibit. Even if this was sufficient to establish that Moretto was being treated for a compensable industrial knee injury, nothing in the record established the facts concerning reassignment. An affidavit by counsel was necessary to establish these facts. We also note that in its answering brief, Samaritan relies on Moretto's answers to interrogatories and disclosure statement. The former are not part of the record.

## B. *Interpretation of Subsection 23–1023(B) and of Lavello*

■ Moretto asserts that Samaritan has misinterpreted subsection 23–1023(B) and *Lavello* to apply to the current case because Moretto suffered a secondary back injury rather than an aggravation of his primary industrial knee injury and never claimed or accepted workers' compensation benefits for the secondary back injury. Samaritan answers by arguing that these facts are immaterial to the applicability of subsection 23–1023(B) and of *Lavello*.

An employee "entitled to [workers'] compensation" may pursue a civil remedy against certain third-parties whose negligence has injured the employee. A.R.S. § 23–1023(A). If an employee has not pursued a civil remedy within one year after it accrues, the claim is automatically assigned to the employer/carrier liable for workers' compensation, which may pursue a civil remedy against the third-party or reassign the entire claim to the employee. A.R.S. § 23–1023(B). If an employee does pursue a civil remedy, the employee nevertheless also is entitled to workers' compensation, but the responsible employer/carrier has a lien on the employee's recovery from the third-party "to the extent of [workers' compensation] paid." A.R.S. § 23–1023(C).[4]

In *Lavello*, an employee suffered a compensable industrial knee injury in April 1978. The employee had an arthroscopy in November 1978, but the surgeon did not perform a meniscectomy. The employee last saw this surgeon in March 1979, and that same month the industrial injury claim was closed with a 5% permanent impairment.[5] The employee's knee symptoms persisted, the industrial injury claim apparently was reopened, and another doctor ultimately performed a meniscectomy in May 1980. The industrial injury claim was reclosed with a 20% permanent

impairment in September 1981.[6] *See Lavello*, 150 Ariz. at 235–36, 722 P.2d at 962–63.

Meanwhile, the employee had filed a medical malpractice action against the first surgeon in March 1981, alleging that his failure to perform a meniscectomy in November 1978 had caused a significantly worsened knee condition.[7] The doctor answered in part by denying that the employee had a cause of action in his own right and later moved for summary judgment under A.R.S. subsection 23–1023(B). This motion was denied, and a jury subsequently returned a verdict against the doctor. *Id.* at 236, 722 P.2d at 963.

On appeal, this court reversed, concluding that "an action for negligent aggravation of an industrial injury through medical malpractice constitutes a third-party action subject to A.R.S. § 23–1023(B)." *Id.* at 237, 722 P.2d at 964. The court explained that medical treatment for a compensable industrial injury is considered an outgrowth of the industrial injury claim and therefore that the consequences of negligent medical aggravation of an industrial injury are compensable. *Id.* at 238, 722 P.2d at 964 (citing *Liberty Mutual Ins. Co. v. Western Casualty and Surety Co.*, 111 Ariz. 259, 263, 527 P.2d 1091, 1095 (1974), and *Talley v. Industrial Comm'n*, 137 Ariz. 343, 347, 670 P.2d 741, 745 (App.1983)). The court also stated that "the applicability of § 23–1023 depends by its terms not on the nature of the injury-producing event, but rather on the employee's entitlement to compensation," and distinguished the consequences of a "separate, nonindustrial event," to which subsection 23–1023(B) does not extend. *Id.* at 238, 722 P.2d at 965 (citing *Talley*, 137 Ariz. at 346–47, 670 P.2d at 745–46). Finally, the court equated subrogation rights under subsection 23–1023(B) and lien rights under subsection 23–1023(C) because both prevent double recovery and require a

---

4.  The employer/carrier must also approve any settlement of the claim that is for an amount less than the compensation provided for under the Workers' Compensation Act. *Id.*

5.  This leg impairment presumably was compensated as a scheduled disability under A.R.S. section 23–1044(B)(21).

6.  This increased leg impairment also presumably was compensated as a scheduled disability under A.R.S. section 23–1044(B)(21).

7.  The court did not expressly address accrual of the malpractice claim, but it did note that the action was filed about two years after the employee last saw the doctor. *Id.* at 236, 722 P.2d at 963.

tortfeasor to reimburse the responsible employer/carrier "for compensation actually paid." *Id.* at 239, 722 P.2d at 965 (quoting *Olivas v. United States,* 506 F.2d 1158, 1165 (9th Cir.1974)).

Moretto is correct that *Lavello* and the current case do have two significant factual differences. In *Lavello,* the failure to perform a meniscectomy (1) directly aggravated the primary industrial knee injury, and (2) increased the compensation carrier's liability. Here, the physical therapist's alleged negligence (1) caused a distinct secondary back injury but did not aggravate the primary industrial knee injury, and (2) did not increase the responsible workers' compensation carrier's liability because Moretto never claimed or accepted workers' compensation for the secondary back injury.

The legal question is whether these two factual differences distinguish this case from *Lavello* in principle. We conclude that we need not address the first difference because we find the second difference dispositive.

Regarding the second difference, Moretto argues that sub-section 23–1023(B) should not as a matter of policy apply unless an injured employee has claimed or accepted compensation for the result of negligent treatment. Samaritan answers by arguing that Moretto's undisputed claim for the primary industrial knee injury is sufficient to trigger subsection 23–1023(B). For the reasons that follow, we agree with Moretto.

■ Statutory interpretation is a question of law to which we apply an independent judgment standard of review. *See, e.g., Fremont Indem. Co. v. Industrial Comm'n,* 182 Ariz. 405, 408, 897 P.2d 707, 710 (App.1995). Our goal is to effectuate legislative intent. We infer intent from, among other indicia, the language of the statute and its purpose. *See, e.g., id.*

· The language of the statute supports conflicting inferences. On one hand, subsection 23–1023(A) literally makes applicability of the statute depend on *entitlement* to compensation. On the other hand, subsection 23–1023(C) limits the lien to the compensation paid. In the current case, even if Moretto was entitled to compensation for the back injury, the responsible carrier never paid compensation for this injury because Moretto did not claim it.[8]

■ We accordingly consider the purposes of subsection 23–1023(B) and section 23–1023 as a whole. Subsection 23–1023(B) is *not* a statute of limitations. *See Smith v. Payne,* 156 Ariz. 506, 512, 753 P.2d 1162, 1168 (1988). Its purpose is not to relieve third-party tortfeasors of liability. *Id.* at 509, 753 P.2d at 1165. Rather, it is part of a statutory scheme that requires tortfeasors to pay damages to those injured by their wrongs, that reimburses employers/carriers for their compensation liability, and that allows injured employees to receive the excess of the damage recovery over compensation but eliminates any double recovery. *See, e.g., Martinez v. Industrial Comm'n,* 168 Ariz. 307, 310, 812 P.2d 1125, 1128 (App.1991).

We conclude that extending subsection 23–1023(B) to the current case would not serve the purposes of this statute. Moretto has not claimed or accepted compensation for the back injury and therefore would not receive a double recovery from his tort claim against Samaritan. The responsible workers' compensation carrier has not paid compensation for the back injury and therefore has no right to reimbursement for any increased liability resulting from the back injury. Applying subsection 23–1023(B) to this case would merely create a trap for the unwary and unnecessarily shield an alleged tortfeasor from liability. This obviously was not the intent of the statutory scheme.

■ We recognize that an employer/carrier whose liability is increased as a result of malpractice may recover not only the compensation paid for the secondary injury but also compensation paid for the primary inju-

---

8. Moretto arguably is now barred from claiming compensation for the back injury. *See Sun Control Tile Co. v. Industrial Comm'n,* 117 Ariz. 268, 270, 571 P.2d 1064, 1066 (1977) (requiring new injury claim for new secondary injury); A.R.S. § 23–1061(A) (requiring new injury claim to be filed within one year after claim accrues). Alternatively, Moretto arguably would be estopped from claiming compensation. *Cf. Unruh v. Industrial Comm'n,* 81 Ariz. 118, 120–21, 301 P.2d 1029, 1031 (1956) (applying quasi estoppel to widow's claim).

ry. *See Liberty Mut. Ins. Co. v. Western Cas. & Sur. Co.*, 111 Ariz. 259, 261–62, 527 P.2d 1091, 1093–94 (1974). *But see* 6 Arthur Larson, *Larson's Workers' Compensation Law* § 72.65(a) (1997) (criticizing rule). But if Samaritan's interpretation were correct, an employer/carrier whose liability is not increased may sue a tortfeasor solely to recover compensation it paid for the primary injury. We disagree that the legislature intended this anomalous result.

Professor Larson generally supports our conclusion, indicating that subrogation does not apply when an employer/carrier has not paid compensation for a secondary injury. *See* 6 Arthur Larson, *Larson's Workers' Compensation Law* § 72.65(a), at 14–290.74 n. 91.1. We also have discovered one case denying subrogation in part because the injured worker did not claim or accept compensation for a secondary injury. *See Jefferson Medical College Hosp. v. Savage*, 7 Pa. Cmwlth. 35, 298 A.2d 694, 697 (1972).

For these reasons, we reverse summary judgment and remand for further proceedings consistent with this opinion.

EHRLICH, P.J., and SULT, J., concur.