8 P.3d 380

Edward MORETTO, Plaintiff–Appellant,

v.

SAMARITAN HEALTH SYSTEM, an Arizona corporation; authorized and d/b/a/ Havasu Samaritan Regional Hospital, Defendant–Appellee.

No. 1 CA–CV 99–0049.

Court of Appeals of Arizona, Division 1, Department A.

July 25, 2000.

gional Hospital while undergoing physical therapy for an industrial injury to his knee. The trial court entered summary judgment for Defendant Samaritan Health System, which administers the hospital, concluding that Moretto had relinquished his claim against Samaritan by failing to pursue it within statutory time constraints.

¶ 2 The statute in question, A.R.S. § 23–1023(B) (1995), transfers the right to bring a third-party personal injury claim from a workers' compensation recipient to the workers' compensation provider if the recipient does not file the claim within one year. Moretto filed his suit against Samaritan within the two-year period of limitations for personal injury claims, but not within the shorter time frame of § 23–1023.

¶ 3 In deciding Moretto's appeal from summary judgment, we answer two questions: (1) When a separate and distinct secondary injury results from negligent medical treatment of a primary industrial injury, is the second injury compensable under workers' compensation law? (2) If so, can the medical caregiver, if sued more than one year after the second injury, achieve dismissal pursuant to § 23–1023 by asserting that the right to bring the claim has passed to the workers' compensation provider, when, as here, the compensation provider has neither opened a claim for the second injury nor otherwise undertaken the formalities of processing it as a compensable injury claim?

¶ 4 Answering the first question in the affirmative but the second question in the negative, we reverse summary judgment and remand for proceedings on the merits.

Keith S. Knochel, Bullhead City, for Plaintiff–Appellant.

Fadell, Cheney & Burt, P.L.L.C. By Brian R. Burt, Phoenix, for Defendant–Appellee.

## OPINION

FIDEL, Judge.

¶ 1 This medical malpractice lawsuit arises from a back injury that Plaintiff Edward Moretto sustained at Havasu Samaritan Re-

## BACKGROUND

¶ 5 The back injury that underlies this suit occurred on July 13, 1994, at Havasu Samaritan Regional Hospital, where Moretto was receiving daily physical therapy following surgery for an industrial injury to his knee. As Moretto leaned forward on a rolling stool to put a brace on his leg, the stool rolled from under him and he fell to the floor, harming his back. The physical therapist, a Samaritan employee, was negligent, he claims, in leaving him unattended to put the

brace on while seated on a rolling, and thus unsuitable, stool.

¶ 6 Moretto filed suit against Samaritan on November 3, 1995, more than a year after the back injury. In August 1996, more than two years after the back injury, Samaritan moved to dismiss, asserting pursuant to A.R.S. § 23–1023(B) that any right to bring the suit had passed to Reliance Insurance Company, Moretto's compensation provider, and that Moretto had not obtained a reassignment of the claim.

¶ 7 The trial court granted Samaritan's motion, but in *Moretto v. Samaritan*, 190 Ariz. 343, 947 P.2d 917 (App.1997) ("*Moretto 1* "), this court reversed. Finding no evidence that Moretto had claimed or Reliance had paid compensation for the back injury, we observed, "Applying subsection 23–1023(B) to this case would merely create a trap for the unwary and unnecessarily shield an alleged tortfeasor from liability." *Id.* at 348, 947 P.2d 917, 917 P.2d at 922.

■ ¶ 8 On remand, Samaritan moved for summary judgment, submitting evidence that Reliance had in fact paid for treatment of Moretto's back. Specifically, Moretto saw Dr. Binder, his knee surgeon, for a series of follow-up visits between July 13, 1994, the date of his hospital fall, and June 28, 1995; during each of these visits Dr. Binder examined Moretto's knee *and* back, and during at least one visit, he issued Moretto medication for his back. Reliance paid for each of the visits and also paid, upon Dr. Binder's recommendation, for two MRI scans of Moretto's back.[1]

¶ 9 Asked at his deposition if his back examinations were "paid for," Moretto responded, "As far as I know." He acknowledged that he "never had to pay for any separate examination for [his] back" or for the MRIs. By affidavit, however, Moretto added that he never was advised or understood that Reliance was treating his back injury as a compensable injury. To the contrary, according to his affidavit, he was twice advised by Reliance representatives that workers' compensation covered only his knee injury and not his back.

¶ 10 The trial court accepted, for purposes of summary judgment, Moretto's account of what he was told by Reliance representatives, but attributed "so little probative value that reasonable people could not agree" to Moretto's representation that he did not knowingly accept or consent to Reliance's payment of his medical expenses. Finding that Moretto had accepted workers' compensation benefits, the trial court concluded that A.R.S. § 23–1023 applied and that Moretto's right to pursue a cause of action had passed to Reliance after one year. From the trial court's grant of summary judgment, Moretto brings this timely appeal.

■ ¶ 11 On appeal from summary judgment, we consider the evidence in the light most favorable to the party opposing summary judgment. *See Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Orme School v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). The two issues that we consider present questions of statutory interpretation. Questions of statutory interpretation are questions of law, which we resolve independently of the analysis of the trial court. *See e.g., Fremont Indem. Co. v. Industrial Comm'n*, 182 Ariz. 405, 408, 897 P.2d 707, 710 (App.1995).

## COMPENSABILITY OF DISTINCT SECOND INJURIES

¶ 12 We first consider Moretto's argument that the automatic reassignment of § 23–1023 does not come into play because his back injury is not compensable under the Workers' Compensation Act. He argues that causation is too attenuated for the back inju-

---

1. Reliance also paid for an independent medical examination of Moretto's knee and back, but an independent medical examination is not a source of treatment; rather, it is a claims management device that enables a compensation provider to evaluate a claimant's treatment and condition from a source other than the treatment provider. *See Tyree v. Industrial Comm'n*, 159 Ariz. 92, 95, 764 P.2d 1151, 1154 (App.1988).

ry to be regarded as a compensable result of the original injury. We disagree.

¶ 13 An employee is entitled to workers' compensation for injuries arising out of and in the course of employment. A.R.S. § 23–1021(B). It is well established that an "aggravation of the primary injury by medical or surgical treatment is compensable." *See* 1 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 10.09(1) (2000); *Liberty Mutual Ins. Co. v. Western Casualty & Surety Co.*, 111 Ariz. 259, 263, 527 P.2d 1091, 1095 (1974). Thus, for example, in *Lavello v. Wilson*, 150 Ariz. 235, 722 P.2d 962 (App.1985), this court found compensable an exacerbation of a knee injury that resulted from an attending physician's failure to perform timely surgery. The compensable aggravation rule applies not only to the acts and omissions of physicians but to those of other participants in the treatment or convalescence process. *Larson's* at § 10.09(3).

¶ 14 This case, however, does not involve an aggravation of the primary injury. Rather, it involves a new injury, separate and distinct from the first, though a consequence of negligent medical treatment of the first. Thus, it is distinguishable from *Lavello* and other cases of that mold.

¶ 15 Similarly, this case cannot be comfortably described as a "direct and natural result" of the first injury, a Larson formulation frequently used to define the range of compensable consequences of an industrial injury. *See Larson's* § 10.01 ("The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury."); *see also Lou Grubb Chevrolet v. Industrial Comm'n*, 174 Ariz. 23, 26, 846 P.2d 836, 839 (App.1992) (defining a later injury as a direct and natural result of the compensable primary injury "if the industrial injury predisposes a claimant to further injury"). Moretto's injury did not arise out of a predisposition created by the primary injury. *Cf. Carabetta v. Industrial Comm'n*, 12 Ariz. App. 239, 241, 469 P.2d 473, 475 (1970) (back injury compensable consequence of industrial knee injury when knee injury caused fall

resulting in back injury). Nor did it arise from a natural progression of the primary injury. Rather it constituted an entirely distinct second injury caused allegedly by intervening negligent medical treatment of the primary injury. It would strain the language to try to pour such a claim into the mold of a "direct and natural result."

¶ 16 Larson cautions, however, that the legal principles applicable to this area "are not capable of being reduced to some simple, unitary formula." *Larson's* at § 10.04. Thus he describes a separate category of compensable injuries in the course of activities

> undertaken by the employee following upon his or her injury which, although they take place outside the time and space limits of the employment . . . are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury.

*Id.* at § 10.05.

¶ 17 An example of this category is provided by *Joplin v. Industrial Comm'n*, 175 Ariz. 524, 858 P.2d 669 (App.1993). There an employee was injured in an automobile accident while driving home after receiving physical therapy for an industrial injury. This court held the injury compensable, concluding that it arose while the employee was fulfilling a duty of his employment—the duty to submit to necessary medical treatment of a compensable primary injury. *Id.* at 528, 858 P.2d at 673.

¶ 18 This case is comparable, in our opinion, to *Joplin*. Here as there, the employee, at the time of his second injury, was fulfilling a duty of employment by undergoing necessary treatment of his compensable first injury. Thus we reject Moretto's argument that the causal relationship between his knee injury and back injury is too attenuated to render the later injury compensable under the Workers' Compensation Act. Instead, we hold that an injury is compensable when it is caused by the negligent treatment of a compensable primary injury whether the negligence aggravated the primary injury as in

*Lavello,* or caused a new and separate injury as in this case.

¶ 19 Finding Moretto's back injury compensable, we turn to the question whether it was compensated in such a way that Samaritan may benefit from Moretto's failure to observe the time constraints of § 23–1023.

### APPLICATION OF A.R.S. § 23–1023

¶ 20 The trial court placed decisive weight on evidence that Reliance paid for and Moretto received back treatment. The trial court accepted but attributed little probative value to Moretto's representation that he was told by Reliance claims representatives that his back injury was not compensable. Given Moretto's acknowledgment that he was not billed for back treatment and his assumption that it had been paid for, the trial court concluded that he had *accepted* compensation from Reliance, whatever he may have been told.

¶ 21 Unlike the trial court, we do not attribute determinative significance to the fact that Moretto received or accepted medical back treatment at Reliance's expense. We find more significant the question whether Reliance ever formally acknowledged or administered Moretto's back injury as a compensable claim.

■ ¶ 22 Although Samaritan submitted a Reliance representative's affidavit and accompanying documents to prove that Reliance paid for examination and treatment of Moretto's back, neither the affidavit nor the documents referred to or demonstrated the formal administration of a claim regarding the injury to his back. There is no evidence, for example, that Reliance ever issued a notice of claim status defining Moretto's back injury as a compensable claim and accepting it for benefits. Nor is there evidence that Reliance ever issued a notice of claim status defining Moretto's back injury as stationary[2] and terminating benefits. Nor is there evidence that Reliance ever issued a notice of claim status assessing whether the back injury affected his earning capacity either temporarily or permanently.

■ ¶ 23 A compensation provider that administers a compensable injury claim must issue such notices, establishing the evolving status of the claim and permitting the compensation recipient to contest its determinations. *See* A.R.S. §§ 23–1061 (Supp.1999) and –1062 (1995); A.A.C. R20–5–118; A.A.C. R20–5–135 and 136. Such notices not only disseminate claim status information to the recipient and permit the recipient to object and request a hearing throughout the processing of an injury claim; they also provide an important baseline at closure, for if an injured worker must reopen a closed claim, the petition to reopen must demonstrate a "new, additional, or previously undiscovered temporary or permanent condition." A.R.S. § 23–1061(H); *see also Special Fund Div. v. Industrial Comm'n,* 181 Ariz. 387, 390–91, 891 P.2d 854, 857–58 (App.1994).

¶ 24 The record before us not only lacks evidence that Reliance satisfied these requirements; the record affirmatively suggests that Reliance did not. In a "Case Analysis Report" dated July 16, 1996, after Moretto's claim had been closed, Reliance describes the nature of Moretto's injury only as "a torn right knee interior cruciate ligament and a torn medial meniscus"; the summary of injury makes no reference to his back. Similarly, in describing the status of the claim, the document states that Moretto was medically discharged with a "19% permanent impairment to the right lower extremity";[3] the document makes no reference to the status of his back at the time of discharge and no assessment of its effect upon his earning capacity. Indeed, the Case Analysis Report does not mention Moretto's back at all; it merely describes an intent "to put a lien on any potential recovery" he might achieve from a medical malpractice action arising from "the alleged fall he sus-

---

**2.** A condition is stationary when no further medical care is likely to improve it. *See Tsosie v. Indus. Comm'n,* 183 Ariz. 539, 541, 905 P.2d 548, 550 (App.1995).

**3.** A 19% permanent impairment to the right lower extremity is a "scheduled injury" in workers' compensation parlance, whereas a permanent back injury is an "unscheduled injury." The two are compensated differently. *See* A.R.S. §§ 23–1044, –1045 (Supp.1999).

tained at one of his therapy sessions for his knee."

¶ 25 In his opening brief to this court, Moretto argues that it would be "extremely harsh and unjust to apply the reassignment statute" (§ 23–1023(B)) to an injury for which the compensation provider never undertook the administrative formalities of processing a claim. Samaritan does not respond to this argument; instead it rests entirely upon the assertion that Moretto's receipt or acceptance of medical benefits suffices to trigger the application of § 23–1023(B). We, however, find Moretto's argument well-taken.

¶ 26 Under the reassignment statute, if the compensation recipient has not filed a viable third-party claim during the first year after injury, the compensation carrier may take control of the claim, pursue or compromise its own cause of action directly, though only for the amount of its lien, or reassign the entire cause of action to the compensation recipient. *See* A.R.S. § 23–1023(B). Our supreme court has determined that these "statutory provisions for assignment and reassignment were not intended to benefit third-party tortfeasors nor relieve them from liability." *Smith v. Payne,* 156 Ariz. 506, 509, 753 P.2d 1162, 1165 (1988). They were intended rather to assure that compensation providers "would have sufficient time to enforce their subrogated rights to proceed against a negligent third party." *Id.* (quoting *Chevron Chemical Co. v. Superior Court,* 131 Ariz. 431, 439, 641 P.2d 1275, 1283 (1982)). In this case, however, where the evidence suggests that the compensation provider did not administer the third-party injury as a compensable claim, we do not find that application of the time bar of the statute would advance the statutory purpose.

¶ 27 Samaritan argues that the statute also serves to deny a compensation recipient such as Moretto a double recovery. For several reasons, however, that concern is unpersuasive here. First, if there were to be a double recovery, the record does not suggest that it would be substantial. With the exception of a pair of MRI examinations, the cost of which was approximately $2400, the medical services identified by Reliance consist of a series of post-operative examinations by Dr. Bind-

er, Moretto's knee surgeon, during which Dr. Binder examined Moretto's back as well as his knee. The record neither indicates that Reliance segregated back from knee costs for these examinations nor that Dr. Binder assessed an additional charge for examining Moretto's back. Nor does the record indicate that Reliance ever paid any disability benefits regarding the back. Indeed, as we have indicated, the record suggests that Reliance never addressed that subject.

¶ 28 Second, it is undetermined that there will be a double recovery. Although it is debatable whether Reliance is entitled to a lien, given its failure to administer the back injury as a compensable claim, we need not resolve that question here (and cannot, for Reliance is not a party). It suffices for present purposes that Samaritan may readily avoid the risk of double *liability.* If Moretto gains some recovery against Samaritan, if Reliance claims a lien, and if Moretto contests Reliance's entitlement to a lien, Samaritan may interplead Moretto and Reliance pursuant to Rule 22, Arizona Rules of Civil Procedure, and await the court's direction which of them should be paid that portion of the recovery that is contested as a lien.

¶ 29 Because Samaritan may avoid double liability, because the prospect of double recovery is insubstantial and uncertain, and because dismissal of the entire cause of action is an unwarranted windfall to Samaritan, we conclude that to permit Samaritan to invoke the procedural bar of § 23–1023 would not serve the statutory purpose in this case. In a recent case that presents almost a mirror image to this one, our supreme court found forfeiture a disproportionate and unwarranted remedy when a claimant, while contesting compensability with the workers' compensation carrier, settles a third-party liability claim without first seeking that carrier's approval. *See Bohn v. Industrial Comm'n,* 319 Ariz. Adv. Rep. 5, 6, ¶ 13, 999 P.2d 180, 182 (2000). Here likewise we find forfeiture "simply out of proportion to" the interests to be protected, *id.,* where a claimant initiates a third-party claim without first seeking a reassignment from a compensation carrier that has never formally acknowledged or administered a compensation claim for the injury in question.

¶ 30 The Arizona courts have long construed workers' compensation laws "liberally, remedially, and in a manner ensuring that injured employees receive maximum available benefits." *Aitken v. Industrial Comm'n*, 183 Ariz. 387, 392, 904 P.2d 456, 461 (1995). We construe them in that fashion in this case. The first time this matter came before us, we reversed summary judgment, observing that to apply § 23–1023(B) in present circumstances "would merely create a trap for the unwary and unnecessarily shield an alleged tortfeasor from liability." *Moretto 1*, 190 Ariz. at 348, 947 P.2d at 922. Although Samaritan provided additional circumstances upon remand, our assessment has not changed.

¶ 31 For the foregoing reasons, we reverse the trial court's grant of summary judgment and remand for proceedings on the merits.

CONCURRING: THOMAS C. KLEINSCHMIDT, Judge, REBECCA WHITE BERCH, Judge.