Christy LARSON, a married woman, Plaintiff-Appellant,

v.

HARTFORD INSURANCE COMPANY OF THE MIDWEST, a foreign insurer, Defendant-Appellee.

No. 15-16109

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 2017 Pasadena, California

Filed July 17, 2017

Robert Joseph Hommel, Robert J. Hommel, P.C., Scottsdale, AZ, Orien Praiser Nelson, Law Offices of Robert J. Hommel, P.C., Phoenix, AZ, for Plaintiff-Appellant

Deanne C. Ayers, Esquire, Attorney, Ayers & Ayers, Colleyville, TX, for Defendant-Appellee

Before: O'SCANNLAIN and OWENS, Circuit Judges, and WILKEN,* Senior District Judge.

## MEMORANDUM **

Christy Larson appeals from a series of unfavorable district court rulings in her lawsuit against Hartford Insurance Company of the Midwest ("Hartford")[1] that ultimately resulted in the dismissal of all her state law claims. The facts are known to the parties and will not be repeated here unless necessary.

### I

The district court did not abuse its discretion in denying Larson's motion to compel discovery regarding Hartford's compensation and evaluation policies. A district court has "broad discretion ... to permit or deny discovery." *Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996). Larson fails to offer evidence that she was actually and substantially prejudiced. The

---

* The Honorable Claudia Wilken, Senior United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1. References to Hartford include the actions of its agents, such as its third party adjustor Gallagher Bassett, that Hartford is responsible for.

district court had already granted substantial discovery regarding compensation and evaluation and had reasonable concerns with the scope of her requests. *See id.*

## II

The district court did not abuse its discretion in limiting Everette Herndon's expert opinion testimony and gave several valid reasons for doing so. Larson does not confront the district court's reasoning but instead makes an inapposite argument that Herndon was a qualified expert who had reviewed the record.

## III

### A

The district court did not err in granting Hartford's summary judgment motion and dismissing Larson's claim for punitive damages. *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 723 P.2d 675, 681 (1986) (stating that "something more than the conduct required to establish the tort" is necessary to prevail on a claim for punitive damages). Larson fails to offer any evidence of intentional oppressive or malicious conduct beyond the minimum required for bad faith. The evidence offered was "insufficient to put punitive damages to a jury." *Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz. 1, 699 P.2d 376, 384 (1984).

### B

The district court did not err in granting Hartford's summary judgment motion and dismissing Larson's bad faith claim with respect to conduct occurring before December 29, 2010. An insurer acts in bad faith if it (1) behaves in an objectively unreasonable manner when denying a claim and (2) "either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 280 (2000). An insurer behaves in an objectively unreasonable way if the challenged claim is not "fairly debatable" or when the disputed claim is "fairly debatable" but the insurer fails to "exercise reasonable care and good faith" in defending it. *Id.* at 279.

Hartford argues that the claim was always fairly debatable because there were multiple pieces of evidence indicating Larson may have concealed a prior or ongoing back problem. Tina Gustafson, the claims adjuster assigned to Larson's case, cited the conflicting evidence and desire to review more details about prior claims relating to this injury several times,[2] but Larson refused to sign the relevant release for months. When Gustafson finally received some of the records concerning Larson's prior injuries on December 22, 2010, she approved the medical claim seven days later.

Larson argues Gustafson's reasons for the initial denial were pretextual and the inconsistencies were "immaterial," but the record contained serious inconsistences with respect to the mechanism of the injury and whether her prior injury had not just flared-up. Larson's claim was fairly debatable and Hartford did not act unreasonably in defending it.

Assuming *arguendo* that Hartford's behavior was objectively unreasonable, the evidence indicates Gustafson believed she had a reasonable basis to continue the investigation and to behave as she did.

---

**2.** Gustafson also cited inconsistences in the medical record about how Larson was injured when initially denying the claim. Given the inconsistencies and initial issues, it makes sense Gallagher Bassett would want to wait for more objective evidence before accepting Larson's statements.

Larson fails to raise a factual dispute about whether Hartford acted with the requisite ill-intent. *Id.*

## IV

The district court did not err by overturning the jury verdict with respect to Larson's remaining two bad faith claims. A renewed Rule 50 Motion for Judgment as a Matter of Law can only be granted if, construing the evidence "in the light most favorable to the nonmoving party, [it] permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. A jury's verdict must be upheld if it is supported by substantial evidence." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (citation omitted).

### A

In granting Hartford's renewed Rule 50(b) motion on the bad faith claim relating to the fifty-six day delay in awarding disability benefits, the district court concluded that the evidence proved that Gustafson always had at least two reasonable bases for taking the time she did to approve Larson's disability benefits: (1) she needed to confirm Larson's wage rates, and (2) she needed to confirm which work days Larson missed because of her injury.

■ The district court cited uncontradicted evidence supporting both reasonable bases, such as the fact that wage information was requested prior to December 29 but not received until February 23 and that the record provided support for Gustafson's concern that the injury did not cause all her work absences. Additionally, there is no evidence showing that Gustafson acted without believing she had a reasonable basis or with reckless disregard—while Gallagher Bassett's behavior was not ideal, even negligence is not enough to

support a bad faith claim. *Zilisch*, 995 P.2d at 280.

Larson is forced to speculate that the evidence and stated reasons for the delay were actually pretexts concealing a hidden conspiracy to delay or diminish the disability payment for no good reason. Such speculation is not substantive enough to support the jury verdict, and thus the district court did not err.

### B

■ The district court also correctly granted Hartford's renewed Rule 50(b) motion on Larson's bad faith claim relating to her need for additional medical treatment after May 2011. Larson did not request treatment until September 2011 and never communicated a specific need or urgency to Hartford before then. The communication by Larson's lawyer to Gallagher Bassett's attorney in late May that Larson's closed case should be reopened did not contain any specific request for treatment, just a statement that "[s]he needs further treatment." Once Gallagher Bassett became aware of her specific medical needs, it moved quickly to begin the process for treatment. Additionally, there is no meaningful evidence Larson was ever denied treatment—her only proof to the contrary is that an attempt to arrange an appointment with a doctor in May was denied because she could not "get on their schedule." No evidence shows that Gustafson even knew of this incident—let alone that she was the reason Larson could not get on the schedule.

The district court (correctly) scolded Larson's counsel for making unsupported assumptions of fact in his closing argument to try and make up for the lack of evidence supporting her claim. Bare speculation is not enough to support a jury verdict. The district court did not err in granting the motion.

V

The judgment of the district court is **AFFIRMED**.

WILKEN, Senior District Judge, concurring in part and dissenting in part:

I concur in parts I, II and III A of the majority's decision. I respectfully dissent from parts III B and IV.

In part III B, the majority affirms the district court's decision to grant summary judgment for Hartford on Larson's claim that Hartford, in bad faith, denied payment of her medical expenses from the date of her injury at work on July 28, 2010, until December 29, 2010, when it paid them.

The workers' compensation policy of the state of Arizona is to provide medical care and disability income to injured workers and to do so expeditiously. The Arizona Supreme Court has "consistently applied workers' compensation laws liberally, remedially, and in a manner ensuring that injured employees receive maximum available benefits." *Aitken v. Indus. Comm'n of Arizona*, 183 Ariz. 387, 904 P.2d 456, 461 (1995). The aim is "to advance the purpose of placing the burden of industrial injuries upon industry as a whole as opposed to the individual." *EBI Companies/Orion Grp. v. Indus. Comm'n of Ariz.*, 178 Ariz. 624, 875 P.2d 857, 859-60 (1994).

The Legislature has set deadlines in order "to expedite the processing of workmen's compensation claims." *Kasprowiz v. Indus. Comm'n*, 14 Ariz.App. 75, 480 P.2d 992, 994 (1971), *superseded in part by statute*, Act of May 7, 1973, Ariz. Laws 1973, Ch. 133, § 29 (codified in relevant part at section 23-1061(M)), *as recognized in Felker v. Indus. Comm'n of Arizona*, 134 Ariz. 19, 653 P.2d 369, 371 (1982).

In accord with this policy, the Legislature enacted section 23-1061(M), which requires the following of workers' compensation insurers:

> If the insurance carrier or self-insurer does not issue a notice of claim status denying the claim within twenty-one days from the date the carrier is notified by the commission of a claim or of a petition to reopen, the carrier shall pay immediately compensation as if the claim were accepted, from the date the carrier is notified by the commission of a claim or petition to reopen until the date upon which the carrier issues a notice of claim status denying such claim.

Ariz. Rev. Stat. Ann. § 23-1061(M).[1] On its face, this law plainly requires a workers' compensation insurer to decide whether to pay or deny a claim within twenty-one days and, if it cannot, to pay the claim unless and until it can properly deny it.

An insurer may not knowingly or recklessly deny benefits without a reasonable basis; to do so is tortious bad faith. *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981) (in banc); *see also Moretto v. Samaritan Health Sys.*, 198 Ariz. 192, 8 P.3d 380, 384 (2000); *Post v. Indus. Comm'n of Ariz.*, 160 Ariz. 4, 770 P.2d 308, 311 (1989). An insurer acts in bad faith if it "[i]nstitutes a proceeding or interposes a defense that is not ... [w]ell-grounded in fact." Ariz. Admin. Code R20-5-163(A).

---

1. In *Kasprowiz,* the Arizona appeals court held that an insurer must pay a claim if it fails to accept or deny it by the statutory deadline, which at the time was fourteen days. 480 P.2d at 995. The court so held even though it found that the claimant in *Kasprowiz* had not proved that he was injured in the course of his employment and therefore did not have a valid claim. *Id.* In section 23-1061(M), the Legislature codified the *Kasprowiz* rule and extended the deadline from fourteen days to twenty-one.

Claims adjuster Gustafson decided by August 9 that she would deny Larson's claims, and she formally did so on September 7, without a reasonable factual basis to find that the claims were not covered. She admitted that she did so in order to evade the deadline set by section 23-1061(M). In keeping with Arizona's policy to protect workers, its Legislature's clear intent in enacting section 23-1061(M) was to require payment during the pendency of post-deadline investigations. The language used—the insurer "shall pay immediately"—indicates the Legislature's intent to compensate injured workers as quickly as possible. To allow an insurer to deny a claim, without substantive justification, merely to avoid paying in the interim, would subvert the Legislature's intent by forcing an injured worker to wait without income and perhaps, like Larson, without medical insurance, whenever an insurer wishes to investigate a claim beyond the statutory deadline. Arizona places the financial burden caused by a longer investigation on the industry, not on the individual worker. The justification is clear. Here, for example, Larson lost her home.

The district court accepted the rationale that Hartford was justified in peremptorily denying Larson's claim in order not to forfeit the right to investigate the claim. This rationale is without merit. On its face, section 23-1061(M) allows an insurer to continue investigating a claim after the twenty one-day deadline and to deny the claim if it later finds grounds to do so.

In affirming the district court's decision to grant summary judgment, the majority describes the legal standard for bad faith incorrectly, stating, "An insurer behaves in an objectively unreasonable way if the challenged claim is not 'fairly debatable' or

when the disputed claim is 'fairly debatable' but the insurer fails to 'exercise reasonable care and good faith' in defending it."[2] Maj. Op. 644 (quoting *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 279 (2000)). However, *Zilisch* is clear that "fair debatability" alone is not enough to defeat a bad faith claim.

> [W]hile fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.

*Zilisch*, 995 P.2d at 280; *see also Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1009 (9th Cir. 2004).

The majority strains even to find that Larson's claim was at all times "fairly debatable." It alludes to "serious inconsistencies with respect to the mechanism of the injury," crediting Gustafson's characterization of the record. Maj. Op. 644; *see also id.* at 4 n.2. But Gustafson generated this inconsistency by mischaracterizing the record, construing a medical record that states that Larson was "working long hours, 1 ½ weeks ago was unloading truck then last week was painting" to mean, "the part where she tells the MD she injured herself unloading her truck." The relevant medical records consistently indicate that Larson was injured when she stepped down while painting at the restaurant. Gustafson's own notes indicate that the

---

**2.** Here and elsewhere in its discussion, the majority describes the posture of this case as if Hartford were defending a claim against its insured, rather than paying a claim by a worker it insured.

injury occurred while painting, as described.

The majority also finds that there were "multiple pieces of evidence indicating Larson may have concealed a prior or ongoing back problem." Maj. Op. 644. The single piece of evidence in support of this theory is a September 19 emergency department report that described Larson as having a history of "chronic" back problems. The majority overlooks the reasonable inference that she was so described because her injury had persisted for approximately two months by the time of the report. In any case, the existence of a prior injury would not justify denial because aggravated prior injuries are compensable. *Arellano v. Indus. Comm'n*, 25 Ariz.App. 598, 545 P.2d 446, 451 (1976).

The majority concludes by simply declaring that "Hartford did not act unreasonably" in denying Larson's claim, Maj. Op. 644, without explaining why reasonable jurors could not credit the evidence that Gustafson mischaracterized the record and wrongfully delayed payment. Similarly, the majority's conclusion that Hartford lacked the requisite state of mind required for bad faith is unjustified in light of this evidence, as well as a proper reading of section 23-1061(M) and Gustafson's admitted conscious evasion of the statutory requirements.

The district court made much of Hartford's efforts to obtain a sweeping collection of all of Larson's prior medical records, whether related to her lower back or not.[3] A reasonable jury could find both that Larson's behavior was not obstructionist and that Hartford's unreasonable delay in payment was not driven by any delays in obtaining releases.

Gustafson apparently asked Larson to sign a blanket release authorization on August 9 and again on August 11. Gustafson wanted to "do a medical sweep and pharmacy sweep" using an outside investigative firm. To facilitate the sweep, she asked Larson to sign a release blanket release for "[a]ll medical records" and list "all doctors, hospitals and clinics that you have treated with in the last 10 years." But on August 9, Gustafson had already decided to deny the claim prior to a planned independent medical examination (IME). Furthermore, the release was overly broad in requesting all medical records and all providers, not just those related to back injury. Unrelated medical information is privileged. Ariz. Rev. Stat. Ann. § 23-908(D). Even without the release, Hartford received the medical records relevant to Larson's injury by September 7 at the latest.

Larson apparently had not yet responded to Gustafson's broad release request when Hartford formally denied her claim on September 7. Larson did orally refuse to sign the release on September 15, on the advice of the lawyer she retained after the denial of her claim. In a September 17 letter, her lawyer clarified that he merely wanted Hartford's records requests go through him, presumably because the parties were then engaged in the contested Industrial Commission of Arizona (ICA) proceeding, necessitated by Hartford's denial of Larson's claim. *See* Ariz. Rev. Stat. § 23-947.

On September 14, Hartford's IME doctor found that Larson's back pain was causally related to the injury she suffered at work on July 28. Hartford received the IME report, dated September 20, by October 7 at the latest, but still it did not pay the claim. On October 21, Larson signed a release for all medical records from the

---

3. The majority finds that Larson "refused to sign the relevant release for months." Maj. Op. 644. As discussed below, the facts are more complicated.

two facilities where she was treated for her injury, providing for records unrelated to her injury, in addition to the records of her injury, which Hartford already had.

Meanwhile, Hartford searched a comprehensive index of prior workers' compensation claims for any that could have been made by Larson, and on October 12 it asked Larson for blanket releases for all medical records relating to nine different workers' compensation claimants it found there. The claimants were injured as many as fifteen years earlier, some of them were obviously not Larson, and none of the subject injuries was to the lower back.

On October 20, Larson's lawyer responded, asking that Hartford explain the relevance of these records. As of November 9, he had not received a reply. Nonetheless, Larson signed all of the workers' compensation index releases and her lawyer transmitted them to the insurers on November 10.

The district court found that that Larson "blocked" Hartford's efforts to obtain prior medical records, forcing Hartford to litigate before the ICA to obtain them. Hartford asserts that Larson agreed to provide the records only "in compliance with an ICA decision." This misconstrues the evidence. First, Hartford's motion pertained only to the broad releases of workers' compensation index claims that it requested on October 12, not to releases of records relevant to Larson's injury and treatment, which it already had. Furthermore, the motion was filed on November 15, after Larson had signed the workers' compensation index releases. The parties' remaining dispute apparently pertained to the records held by two insurers that were based out of state. And the motion to compel was never decided by the ICA because the parties agreed that they would review the out-of-state records jointly.

Hartford repeatedly asserts that Larson's lawyer then "did not actually request the records until December 3," and the majority notes that Gustafson did not receive some of the records until December 22. Maj. Op. 644. But the evidence shows that Larson's lawyer requested the files from the insurers on November 10, before Hartford even filed its motion to compel on November 15. Larson's attorney's requests dated December 3 are plainly marked, "THIS IS OUR SECOND REQUEST. THE FIRST WAS SENT ON 11/10/10. PLEASE EXPEDITE [sic]." He contacted Hartford's lawyer on December 22 to arrange review of the files. On this record, a jury would not be bound to find Larson responsible for any delay in Hartford's receipt of medical records concerning unrelated claims or that any such delay justified Hartford's continued failure to pay Larson's claims.

For the foregoing reasons, I would hold that the district court erred as a matter of law by interpreting the deadline established by section 23-1061(M) as justification for peremptorily denying Larson's claim. It was not reasonable for Hartford to deny Larson's claim without any information on which to base its denial. To the contrary, I would hold that Gustafson's admission that she intentionally evaded the law is more than sufficient evidence of bad faith to raise a disputed issue of material fact. Furthermore, the evidence on which the district court and the majority rely even to find that Larson's claim was fairly debatable and that Hartford acted reasonably is far from undisputed; a reasonable jury could find to the contrary on either issue. I would reverse summary judgment and remand for trial of this claim.

In part IV, the majority affirms the district court's decision to grant Hartford's Rule 50(b) motion, overturning the jury's verdict for Larson on the two claims that

survived summary judgment. The majority affirms the decision to overturn the verdict of bad faith delay in awarding Larson disability income benefits because "Gustafson always had at least two reasonable bases for taking the time she did to approve Larson's disability benefits," namely, to confirm Larson's wage rate and to ascertain the days she missed due to her injury. The majority notes that there was "uncontradicted evidence supporting both reasonable bases." Maj. Op. at 644–45. The evidence was not uncontradicted. For example, Gustafson received Larson's wage rate on August 11, and, using that rate, was able to calculate the benefits owed to Larson on November 17. There was also evidence that Gustafson performed wage calculations on December 23 and arrived at precisely the number that Hartford ultimately paid, though it waited until February 23 to do so.

When Gustafson accepted Larson's claim on December 29 for the purpose of paying medical benefits only, she justified her failure to pay temporary disability benefits as well by affirming in the notice of claim status, "No compensation paid because no time was lost from work in excess of seven days attributable to this injury." But Gustafson had known otherwise for months.

The majority credits the district court's finding that the "record provided support for Gustafson's concern that the injury did not cause all her work absences." Maj. Op. 645. But the district court does not identify this evidence. Hartford argues, "There were full duty releases to return to work, periods of employment, and questions regarding whether Larson was off work due to the compensable injury versus an unrelated condition." But the report that Gustafson claimed granted Larson a full return to work does not do so, as Gustafson was forced to concede, and instead pre-

scribes Larson OxyContin and an "urgent orthopedic back specialist consult." In her testimony at trial, Gustafson generally claimed that the reason she did not know how many days Larson missed work was that, after the initial doctor's note saying she could not work, subsequent doctors' notes did not explicitly say she could not return. But Gustafson's claims notes tell a different story: on October 7, after receiving the IME report, she noted that "Clmt is not capable of RTW at this time." Gustafson was informed on or around December 23 that Larson's release to work date was December 22. Gustafson's notes from February 2 show that she knew that Larson had just returned to work on December 30. The period of employment that Hartford refers to appears to be Larson's actual return to work in December. Suspicions about Larson's prior injuries had proved unfounded.

In resolving the conflicting evidence regarding Hartford's knowledge of Larson's wage rate and inability to work, the jury not unreasonably favored that supporting Larson, particularly in the light of the history of Hartford's handling of the medical claim from its inception. "A jury's verdict must be upheld if it is supported by substantial evidence." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (citation omitted). Even if there is substantial evidence on the other side as well, it is not our task, nor that of the district court, to weigh the evidence. I would reinstate the jury's verdict on this claim.

The majority also affirms the decision to overturn the jury's verdict that Hartford delayed, in bad faith, additional medical treatment for Larson after her pain returned in May 2011. The majority acknowledges that Larson informed Hartford in May that she "needs further treatment," Maj. Op. 645, but does not mention that

her lawyer also informed Hartford that she "needed to see a doctor at that point." Gustafson herself received the request on June 3. Yet the majority finds inconsistently that Larson "did not request treatment until September 2011 and never communicated a specific need or urgency to Hartford before then." Maj. Op. 645. Larson requested treatment in May; that she may have failed at that time to state that her need was urgent or to provide her own diagnosis does not compel the conclusion that Hartford's six-month delay in providing treatment was reasonable.

The majority finds that "there is no meaningful evidence Larson was ever denied treatment." Maj. Op. 645. But neither was her treatment request granted. It was ignored. Larson did not have health insurance and was not eligible for Medicaid. She eventually paid to see a specialist who confirmed in September 2011 that she needed treatment. Hartford responded by commissioning another IME, which was performed on November 11 and disclosed that Larson's recurrent symptoms were causally related to the original injury and that she needed further treatment. Hartford accepted the claim on November 23. The jury not unreasonably found that Hartford engaged in "conduct that invades the insured's right to honest and fair treatment," *Zilisch*, 995 P.2d at 280, again, particularly in light of the history of Hartford's handling of this claim. Accordingly, I would reverse the district court's decision on this claim as well.